AMERICAN NAT. BANK OF MACON v. COMMERCIAL NAT. BANK OF MACON et al.

(Circuit Court of Appeals, Fifth Circuit. November 15, 1918.)

No. 3240.

BANKS AND BANKING ⊂⇒283—LIQUIDATION OF NATIONAL BANK—SUIT AGAINST STOCKHOLDERS.

Contract for consolidation between two national banks, by which one agreed to voluntarily liquidate and transfer all its assets to the other, which agreed to act as its liquidating agent and to pay all claims against it, construed, and, as acted upon by the parties, *held* to create the relation of debtor and creditor between them, which would support a suit against the stockholders of the liquidating bank on the insufficiency of its assets to pay its debts.

Appeal from the District Court of the United States for the Southern District of Georgia; Beverly D. Evans, Judge.

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit in equity by the American National Bank of Macon against the Commercial National Bank of Macon and others.. Decree for defendants, and complainant appeals. Reversed.

For opinion below, see 248 Fed. 187.

This is an appeal from a decree sustaining motions to dismiss an amended bill in equity filed in the District Court by the appellant, the American National Bank of Macon, against the Commercial National Bank of Macon and its shareholders. The bill as amended showed that it was filed by the plaintiff as a bill in the nature of a creditors' bill on behalf of the plaintiff and all other creditors of the defendant bank against the latter and its shareholders for the purpose of enforcing the statutory liability of said shareholders for the payment of the indebtedness of the defendant bank. The averments of the bill as amended disclosed the following facts (the plaintiff and the defendant banks, each of which was located in the city of Macon, Ga., being hereinafter referred to as the American Bank and the Commercial Bank, respectively):

On the 31st day of July, 1914, the Commercial Bank applied to the American Bank for a loan of money to enable it to meet its obligations and to pay and satisfy its depositors. After some negotiations between the two banks, they, on August 3, 1914, entered into a written contract, of which the following is a copy:

"Georgia, Bibb County.

"Articles of agreement for the liquidation of the Commercial National Bank of Macon, Georgia, by the American National Bank of Macon, Georgia, both being national banking associations, made and entered into between said banks as the contracting parties.

"Whereas, on the 1st day of August, 1914, the board of directors of the Commercial National Bank, at a meeting of said board duly and regularly called, adopted a resolution which authorized the officers of said association to commence proceedings for the liquidation of said association under sections 5220 and 5223 of the U. S. Revised Statutes, for consolidation with said American National Bank, and to transfer to said American National Bank all the assets of said Commercial National Bank, which assets were by said resolution so transferred and assigned, in order to fully protect and secure said American National Bank for all moneys advanced or to be advanced by said association in the assumption and payment of the liabilities of said Commercial National Bank shown by a list of said liabilities hereto attached and identified as Exhibit A, and by the signature of the parties hereto, and which said resolution further provided that said American National Bank should take over the business of said Commercial National Bank, liquidate said assets, and account to the shareholders of said Commercial National Bank for any overplus which might remain after paying the depositors and other indebtedness of said Commercial National Bank in full, and the expense of realizing on the assets so transferred, the said American National Bank to charge nothing for its services in so doing, and which resolution further authorized and directed the officers of said Commercial National Bank to make such contract with the American National Bank as might be necessary or appropriate in order to carry out the general purposes of said resolution, the details of said contract to be left to the discretion of said officers; and

"Whereas, on the same date, the board of directors of the American National Bank, at a meeting of said board duly and regularly called, adopted a resolution whereby said American National Bank assumed the payment of said depositors and other liabilities of said Commercial National Bank, shown by the list of liabilities set out in Exhibit A hereto attached and hereinbefore referred to, upon condition that the assets of said Commercial National Bank should be transferred to said American National Bank sufficient in amount and in value in the estimation of the officers of the American National Bank to fully protect and secure said association for any and all amounts payment of which was assumed under said resolution, and which resolution authorized the officers of said association to make such contract as might be

necessary to carry out the purposes of said resolution, the details to be left to the discretion of said officers; and

"Whereas, the preliminaries and conditions in said resolution mentioned have been complied with, and the assets of the Commercial National Bank have been delivered to said the American National Bank;

"Now, therefore, these articles of agreement witness:

"I. That said Commercial National Bank has transferred, assigned, conveyed, and confirmed, and does by these presents transfer, assign, convey, and confirm, unto the American National Bank of Macon, Georgia, its successors and assigns all of the assets of every kind and description, including cash and cash items on hand at the close of business on August 1, 1914, bills receivable, bonds, real estate, and personal property and interests therein, and choses in action of all kinds, including all of the United States bonds now on deposit with the treasurer of the United States as security for the circulation of the Commercial National Bank of Macon and for deposits of United States deposits, to have and to hold the same unto it, said the American National Bank of Macon, its successors and assigns, in fee simple forever; and the title to said assets and each and all thereof said the Commercial National Bank of Macon, for itself and its successors, hereby warrants unto said the American National Bank, its successors and assigns, against the claims of all persons whatsoever.

"II. That in contemplation of the liquidation of said Commercial National Bank under sections 5220, 5221, and 5223, U. S. Revised Statutes, said Commercial National Bank, by its officers and directors, will call a meeting of the shareholders of said association to be held at Macon, Georgia, on August 12, 1914, and on the date or dates to which said meeting may be from time to time adjourned, and will procure proper resolutions by said shareholders and a sufficient majority thereof to comply with the law in such cases made and provided, liquidating said association and consolidating same with the American National Bank of Macon by the purchase of the assets of said Commercial National Bank by the American National Bank, but without providing for stock in the American National Bank to be issued to the shareholders of the Commercial National Bank, and ratifying and confirming the action of the board of directors of said Commercial National Bank as herein recited, and ratifying and confirming this contract.

"III. That said Commercial National Bank will also procure proper resolutions to be passed by said shareholders, appointing said American National Bank as liquidating agent for said Commercial National Bank in said liquidation for consolidation as aforesaid, said liquidation to be conducted in accordance with law and under the supervision of the board of directors of said Commercial National Bank.

"IV. That said Commercial National Bank, until the final liquidation of its affairs and final settlement with its shareholders, agrees to maintain its corporate existence, and that its directors and officers will at all times when called upon so to do by said American National Bank execute and deliver in the name of said association all other and further writings of all kinds which may be necessary to fully effectuate the transfer of said assets, the liquidation of said association, and this contract.

"V. That in consideration of the foregoing acts and agreements by the Commercial National Bank, said American National Bank hereby agrees that it will, and it does hereby, assume and promises to pay the same when and as the same are presented for payment, the depositors and other liabilities of said Commercial National Bank of Macon shown in Exhibit A hereto attached, and that in addition thereto it will and does hereby assume the redemption of the circulating notes of said Commercial National Bank, and that it will procure such resolution to be passed by its board of directors as may be neccessary for it to assume the redemption of said circulating notes.

"VI. That said American National Bank will accept the appointment as liquidating agent of said Commercial National Bank, and will proceed with all due and reasonable diligence to liquidate said association and to collect and reduce to cash all the assets of said association, all of said assets to be held as security by said American National Bank for all advances made by it in paying the depositors and other liabilities of said Commercial National

Bank and the actual expenses incurred by said American National Bank in realizing on said assets, and that after deducting from the proceeds of said assets the actual expenses incurred by said American National Bank in liquidating said association and acting as liquidating agent and in collecting said assets and realizing upon the same, it will apply said proceeds, first, in repaying to itself all amounts advanced by it hereunder, with interest thereon at the rate of seven (7%) per cent. per annum; next, in discharging the liabilities of said Commercial National Bank which shall not have been paid by advances made by said American National Bank, and that when all of said liabilities have been fully discharged it will account to the shareholders of said Commercial National Bank and from time to time pay over to said shareholders pro rata the surplus remaining in its hands from the proceeds of said assets, said American National Bank to act as such liquidating agent without compensation for its own services.

"It being distinctly agreed and understood that, in the event the said liquidation should be interrupted or discontinued for any reason beyond the control of said American National Bank, then and in that event said American National Bank shall and does hold all of the assets of said Commercial National Bank as security for the advances which may have been made by it, up to the time such liquidation may be so discontinued.

"And it being further distinctly agreed and understood that neither the resolutions of said boards of directors of said associations nor this contract shall relieve the shareholders of the Commercial National Bank from their legal liability as shareholders to respond, in the event it may be necessary to have recourse upon such shareholders' liability, for any deficit which may remain after exhausting the other assets of said association in the payment of its liabilities.

"In witness whereof, the parties hereto have caused these presents to be signed and delivered in duplicate by their proper corporate officers, and their corporate seals to be hereto affixed, this 11th day of August, 1914. Commercial National Bank of Macon, Georgia, by E. Y. Mallary, President. [Seal of Bank.] Attest: E. N. Lewis, Cashier. American National Bank of Macon, Georgia, by R. J. Taylor, President. [Seal of Bank.] Attest: E. O. Scott, Cashier."

The following is a copy of the resolution of the board of directors of the Commercial Bank adopted on August 1, 1914, and referred to in the contract above set out:

"Resolved, that in the opinion of the board of directors of this association it is expedient for this association to go into voluntary liquidation under sections 5220 and 5223 of the United States Revised Statutes, and that the officers of this association be and they are hereby directed to proceed under the by-laws to call a meeting of its stockholders to consider this question and the consolidation of this association with the American National Bank of Macon, Georgia, by the sale of its assets to the said bank.

"Resolved, further, that the exigencies of the situation are such that in contemplation of the liquidation of this association as aforesaid, the board of directors of this association hereby authorize the officers of this association to transfer to the American National Bank of Macon, Georgia, as cash, or as collateral for the notes of this association, all of the assets of this association, including cash, cash items, bills receivable, bonds, real estate, and personal property and choses in action, of all kinds, which said assets are hereby transferred, assigned and delivered to the American National Bank of Macon, Georgia, in order to fully protect and secure said bank for all moneys advanced or to be advanced by that bank under the assumption and payment of its deposits, bills payable, and other liabilities of this association shown by the list of liabilities this day furnished by this association to said bank—said American National Bank of Macon, Georgia, to take over the business of this association and to account to the shareholders of this association for any overplus which may remain after paying the indebtedness of this association in full and the expense of realizing on the assets so transferred, said bank to charge nothing for its services in so doing.

"The officers and finance committee are hereby given full power and authority to carry out the general purpose of this resolution, and the details to be

left to the discretion of said officers and committee, and the said officers and committee are further authorized to make such contracts with said bank as may be necessary or appropriate hereunder."

The following is a copy of the resolution of the directors of the American Bank adopted on August 1, 1914, and referred to in the above copied contract:

"Resolved, that this association assume the payment of the deposits, bills payable, and other liabilities of The Commercial National Bank of Macon, shown by the list of liabilities furnished by said bank to this bank, and agree to pay the same when and as the same are presented for payment, upon condition that said association transfer to this association as cash or collateral for its notes, cash, cash items, bills receivable, bonds, real estate, and other assets, sufficient in amount and in value in the estimation of the officers of this association to fully protect and secure this association for any and all amounts so assumed, or shall otherwise satisfactorily secure this association for all amounts paid or assumed; this association to take over the business of said association in the manner aforesaid, accounting to the shareholders of said association for any overplus which may remain after paying the indebtedness of said association in full, and the expenses of realizing on the assets transferred to this association as aforesaid; this association to charge nothing for its services in so doing. The officers of this association are hereby given full power and authority to carry out the general purpose of this resolution, the details to be left to the discretion of said officers, and said officers are further authorized to make such contract with the directors of said association or with such liquidating agent as may be appointed for said association: Provided, however, that this resolution shall not become effective until the other banks of the Macon Clearing House Association shall, by proper resolutions, agree to supply, in proportion to their respective capital and surplus, their proportionate share of cash and exchange that may be necessary to meet withdrawals by depositors not immediately redeposited in this association, and other cash demands to which this association may be required to respond: Provided, further, that in the event the officers of this association shall, upon a further investigation of the affairs of The Commercial National Bank, deem it unsafe to proceed under this resolution, they shall not do so."

Pursuant to the agreement and resolutions above set out, the American Bank, on August 3, 1914, took charge of all assets of the Commercial Bank so transferred to the former, and from and after that date paid in due course and as called upon all of the depositors of the Commercial Bank, its bills payable, and other liabilities, and proceeded to reduce the transferred assets to cash and to apply the amounts received to reimburse itself for the amounts it had disbursed in the payment of the liabilities of the Commercial Bank pursuant to said agreement. For some two weeks after the above copied agreement between the two banks was entered into, the Commercial Bank continued in active operation, paying off its depositors, cashing checks drawn on it, receiving deposits from its customers, clearing checks on the other Macon banks through the Macon Clearing House, checking on its deposits with other banks, and transacting other business as an active banking institution, its business being handled through its own officers and clerks. Funds to enable it to pay its depositors and meet its other obligations were obtained by it on checks drawn by its proper officers on the American Bank, which checks were cashed by the latter and charged to the account of the Commercial Bank as overdrafts. The amount claimed by the American Bank to be due to it was largely incurred during the period just mentioned.

After the depositors of the Commercial Bank were in large part paid, it continued to draw checks on the American Bank, and these checks were cashed by the latter and charged to the account of the former as above stated. It was found to be impracticable to take notes, as the above-copied resolutions showed had been contemplated, for the amounts disbursed by the one bank in the payment of the liabilities of the other one, and it was agreed by the officers and finance committee of the Commercial Bank with the officers of the American Bank that the amounts so advanced by the latter should be carried by it as an overdraft, and that the overdraft should be secured by the

assets transferred; and this was accordingly done. As collections were made on the notes and other receivables transferred to the American Bank, the amounts so collected were deposited in the American Bank and by it applied to the reduction of the overdraft of the Commercial Bank. In reports made by the Commercial Bank to the Comptroller of the Currency the amount of its overdraft on the American Bank was listed as a liability under the head "Due American National Bank."

While the Commercial Bank was in process of liquidation pursuant to the resolution of its shareholders, by agreement with the liquidating committee appointed by its shareholders the American Bank as liquidating agent offered the Commercial Bank's banking house, with the furniture and fixtures therein, for sale at public outcry after proper advertisement, but, a fair price not being realized at said sale, the American Bank offered to purchase said building at $40,000, said sum to be applied to reducing the indebtedness of the Commercial Bank to it, and this proposition was accepted, and said property was conveyed to the American Bank by the officers of the Commercial Bank pursuant to a resolution adopted by the latter's directors on July 1, 1916, of which the following is a copy:

"Resolved, that the offer of the American National Bank of Macon, as contained in the letter from R. J. Taylor, president, to E. Y. Mallary, president Commercial National Bank, dated July 1, 1916, which said letter has been submitted and read at this meeting, to purchase the Commercial Bank Building, including the vault, safety deposit boxes, bank and other fixtures, and furniture, at and for the sum of forty thousand dollars ($40,000.00), to be credited on the indebtedness of the Commercial National Bank to the American National Bank, be and the same is hereby accepted, and the president or vice president and cashier of this bank are hereby authorized and directed to execute on behalf of this bank and under its seal good and sufficient conveyance of the property to the said American National Bank."

On September 30, 1914, the following resolutions were adopted by votes of more than two-thirds of the shareholders of the Commercial Bank:

"Resolved, that the Commercial National Bank be placed in voluntary liquidation under the provisions of sections 5220 and 5221 of the United States Revised Statutes, to take effect upon this date, and that the American National Bank of Macon, Georgia, be appointed liquidating agent of said bank; that liquidation shall be conducted in accordance with law and under the supervision of the board of directors, who shall require a suitable bond to be given by the said agent in an amount to be fixed by the board of directors; that the said liquidating agent shall render quarterly reports to the Comptroller of the Currency on the 1st of January, April, July, and October of each year showing the progress of said liquidation until said liquidation is completed; that said liquidating agent or committee shall render an annual report to the shareholders on the date fixed in the articles of association for said annual meeting, at which meeting the shareholders may, if they see fit, by a vote representing a majority of the entire stock of the bank, remove the liquidating agent and appoint another in place thereof; that a special meeting of the shareholders may be called at any time in the same manner as if the bank continued an active bank, and at said meeting the shareholders may, by a vote of the majority of the stock, remove the liquidating agent; that the Comptroller of the Currency is authorized to have an examination made at any time into the affairs of the liquidating bank until the claims of all creditors have been satisfied and that the National Bank Examiner will be compensated for his time and expense in making the examination in question."

"Whereas, the board of directors of this association by resolution adopted on August 1, 1914, transferred and assigned to the American National Bank of Macon all of the assets of this association as security for the liabilities of this association which were assumed by the said American National Bank, said resolution being passed in contemplation of the voluntary liquidation of this association under the provisions of sections 5220 and 5221 of United States Revised Statutes; and

"Whereas, on August 11, 1914, a contract between this association and the said American National Bank, signed by the respective officers of said

association, was duly entered into, said contract being made pursuant to the resolution of the board of directors aforesaid; and

"Whereas, on August 12, 1914, a special meeting of the shareholders of this association was held at the banking house of the association in the city of Macon, at which meeting stockholders representing 2616 shares were present in person, and by proxy, at which said meeting a resolution was unanimously passed, ratifying and approving the action of the board of directors in transferring the assets of this association to the American National Bank as aforesaid, and ratifying and approving the contract between the two associations dated August 11, 1914; and

"Whereas, said meeting of stockholders was not called and held in accordance with the articles of association, in that only ten days' notice of said meeting was given instead of thirty days, as required by said articles of association; and

"Whereas, this meeting of stockholders has been called in accordance with the articles of association and after thirty days' notice as provided in said articles of association, for the purpose of ratifying the action of the previous meeting and of taking appropriate action looking to the voluntary liquidation of this association:

"Therefore, resolved, that the action of the board of directors of this association as contained and set forth in the resolution adopted by said board on August 1, 1914, transferring and assigning the assets of this association to the American National Bank of Macon, said resolution appearing on the minutes of said board of directors on August 1, 1914, be and the same is hereby in all respects ratified and approved by the shareholders of this association.

"Resolved, further, that the contract between this association and the American National Bank of Macon, signed by their respective officers and dated August 11, 1914, said contract having been made pursuant to the resolution of the board of directors aforesaid, be and the same is hereby in all respects ratified and approved.

"Resolved, further, that the action of the special meeting of stockholders, approving said resolution of the board of directors and the contract aforesaid and providing for the voluntary liquidation of this association, under sections 5220 and 5221 of the United States Statutes, be and the same is hereby in all respects ratified and approved."

Pursuant to those resolutions the Commercial Bank was placed in voluntary liquidation, the liquidation being practically completed at the time the suit was brought. In satisfying the liabilities of the Commercal Bank the American Bank has paid out more than $320,000 in excess of the amounts realized from the transferred assets. The assets of the Commercial Bank still remaining uncollected and undisposed of are of little value, and there will not be realized from them an amount sufficient to reduce below $300,000 the excess of the American Bank's said payments over the amounts realized from the transferred assets.

Geo. S. Jones and Orville A. Park, both of Macon, Ga., and Alex C. King, of Atlanta, Ga. (King & Spaulding, of Atlanta, Ga., and Hardeman, Jones, Park & Johnston, of Macon, Ga., on the brief), for appellant.

Robert L. Berner, Robert L. Anderson, T. E. Ryals, R. C. Jordan, R. Douglas Feagin, Oliver C. Hancock, W. D. McNeil, J. E. Hall, Warren Grice, and C. L. Bartlett, all of Macon, Ga., and W. A. Dodson, of Americus, Ga. (Minter Wimberly, Jesse Harris, and E. P. Mallary, all of Macon, Ga., and Greene F. Johnson, of Monticello, Ga., on the brief), for appellees.

Before PARDEE, WALKER, and BATTS, Circuit Judges.

WALKER, Circuit Judge (after stating the facts as above). The dismissal of the amended bill is sought to be sustained on the ground

that its averments do not show that the plaintiff bank has a claim or demand against the defendant bank for which the statute (Act Dec. 23, 1913, c. 6, § 23, 38 Stat. 273 [Comp. St. 1916, § 9689]) makes the latter's shareholders individually responsible. In behalf of the appellees it is contended that the alleged transaction between the two banks was a sale of assets by one of them to the other, or a consolidation of the two, and that the contract entered into and performance under it did not result in the creation of the relation of creditor and debtor between them. Provisions contained in the contract give some color to this contention if they are considered by themselves without due regard to the remainder of the contract, the situation with which it dealt, and the conduct of the parties to the contract while performance under it was in progress evidencing what each of them understood was the effect of a compliance by the American Bank with the obligations imposed upon it by the contract. The provisions referred to—namely, the one as to the transfer of the assets, the one in regard to liquidating the Commercial Bank and consolidating it with the American Bank by the purchase by the latter of the assets of the former, and the one in regard to making one of the banks liquidating agent for the other—lose the significance sought to be attributed to them when they are considered in connection with other provisions contained in the contract and in the light of the situation existing when the contract was made and for some time afterwards, and of the construction of the contract by both parties to it as disclosed by what was done under it.

The averments of the bill show that at the time the contract was entered into, and for some time thereafter, the Commercial Bank continued in active operation, performing all the ordinary functions of a bank through its own officers and clerks. Its status then was not that of a liquidating bank. While its board of directors contemplated and made provision for its future liquidation, if and when duly authorized by the required vote of its shareholders, the process of liquidation provided for by the statute (Rev. St. § 5220 [Comp. St. 1916, § 9806]) had not begun, and could not have begun prior to its going into liquidation and being closed by the required vote of its shareholders owning two-thirds of its stock. While the bank was in active operation, its liquidation not having been determined upon by its shareholders, it was capable of incurring obligations for which its shareholders would be responsible under the statute. Schrader v. Manufacturers' National Bank of Chicago, 133 U. S. 67, 10 Sup. Ct. 238, 33 L. Ed. 564; Wyman v. Wallace, 201 U. S. 230, 26 Sup. Ct. 495, 50 L. Ed. 738. The American Bank's obligation to pay the Commercial Bank's depositors and other liabilities when and as the same were presented for payment was effective from the time the contract was made, not being dependent or contingent upon the contemplated closing and liquidation of the Commercial Bank being determined upon by the required two-thirds vote of its shareholders.

Performance was begun by the American Bank while the Commercial Bank remained open, continuing to carry on in the customary way the banking business in which it was engaged. By the terms of the contract the American Bank also obligated itself to continue

to pay the Commercial Bank's depositors and other liabilities when and as the same were presented after the latter went into liquidation and was closed, in the event that happened, the American Bank agreeing to accept the appointment as liquidating agent of the Commercial Bank. In so far as the contract obligated the American Bank to take care of the liabilities of the Commercial Bank prior to the latter being duly closed and put into liquidation, it was one capable of being made by the two banks, acting through their respective boards of directors and managing officers, without being authorized or ratified by a vote of the shareholders of either. Making arrangements for funds needed to meet its liabilities as they accrue is not out of the ordinary course of a banking business. While the Commercial Bank was open, receiving deposits and otherwise continuing the business in which it had been engaged, its directors and managing officers were empowered to incur debts in its behalf to secure funds required to enable it to meet its obligations as they accrued. The creation of debts under such circumstances and for such a purpose is not more out of the ordinary course of a banking business than the incurring of liabilities by the acceptance of deposits.

In determining the meaning and effect of that part of the contract which obligated the American Bank to supply the funds required to take care of the liabilities of the Commercial Bank as they accrued before the question of its closing and going into liquidation should be determined by its shareholders, our consideration is not confined to the language used in the written instrument evidencing the agreement of the parties, but where the terms employed are in any respect equivocal or of doubtful meaning, the construction given to the contract by both parties to it, evidenced by their dealings with each other in the course of carrying out the contract, may be looked to.

The contract contains expressions and provisions which do not seem to us to be reconcilable with the existence of an intention other than that the making by the American Bank of the agreed disbursements in taking care of the liabilities of the Commercial Bank was to have the effect of creating a debt or debts owing by the latter to the former. Those disbursements were called "advances," and it was provided that the amounts realized by the American Bank from the assigned assets was to be applied by it—

"first, in repaying to itself all amounts advanced by it hereunder, with interest thereon at the rate of seven (7%) per cent. per annum; next, in discharging the liabilities of the Commercial National Bank which shall not have been paid by advances made by the American National Bank; and that when all of said liabilities have been fully discharged, it will account to the shareholders of said Commercial Bank and from time to time pay over to said shareholders pro rata the surplus remaining in its hands from the proceeds of said assets."

This plainly indicates that the parties intended that performance by the American Bank of the obligations it incurred was to have the effect of creating an interest-bearing debt owing to it, and that the transferred assets were received and held by it, not as property bought by it, but as a pledge or security for the payment of that debt. If

the stipulated outlays by the American Bank had been understood to be payments on the price of the assets transferred, it is not to be supposed that they would have been called "advances," or that interest on them would have been provided for. Laflin & Rand Powder Co. v. Burkhardt, 97 U. S. 110, 24 L. Ed. 973. The concluding provision of the contract was to the effect that neither the contract nor the resolutions authorizing it—

"shall relieve the shareholders of the Commercial National Bank from their legal liability as shareholders to respond, in the event it may be necessary to have recourse upon such shareholders' liability, for any deficit which may remain after exhausting the other assets of said association in the payment of its liabilities."

It hardly is conceivable that this provision would have been inserted in the absence of an intention that the making by the American Bank of the disbursements it obligated itself to make would result in creating a liability of the Commercial Bank for which the latter's shareholders would be individually responsible.

But it may be assumed or conceded that the language of the contract fails to show unambiguously that performance by the American Bank of the obligations it incurred was to have the effect of making it a creditor of the Commercial Bank. The averments of the bill show that both parties to the contract, from the commencement of performance under it, treated the payments made by the American Bank as having the effect of making it a creditor of the Commercial Bank. The American Bank entered the payments on its books as overdrafts. This was in pursuance of an agreement to which the officers and the finance committee of the Commercial Bank were parties. On the books of the latter these transactions were entered under the head "Due American National Bank." Each of the entries indicated the existence of the relation of creditor and debtor, not that of purchaser and seller. The agreement between the two banks in pursuance of which the disbursements made by the one to discharge the liabilities of the other were entered as overdrafts of the one on the other was as clear a recognition that debts were thereby created as if the one bank had given its notes to the other for the amounts of such disbursements. The incidents mentioned, as well as others disclosed, show that those in charge of the business of each of the banks understood that what was done under the contract had the effect of creating a debt owing by the Commercial Bank to the American Bank. It fairly appears from the averments of the bill as amended that neither party to the contract during the period of performance understood that it had the meaning now attributed to it in behalf of the appellees, and that the conduct of each of them from the time performance under the contract commenced was inconsistent with the contract having that meaning or effect.

We think the averments of the bill as amended show that the American Bank, while the Commercial Bank in the customary way was transacting business as an active banking institution, so made payments for it and at its instance or request that a claim or demand was created against the last-named bank for which its shareholders

are by the statute made individually responsible to the extent of the amount of their stock. It follows that the dismissal of the bill as amended was erroneous.

The decree to that effect is reversed.