## HIGHTOWER et al. v. AMERICAN NAT. BANK OF MACON.

(Circuit Court of Appeals, Fifth Circuit. November 5, 1921.)

No. 3722.

1. **Banks and banking ⬤�singleⁱ250(5)—Evidence held to show bank a creditor of another bank entitled to enforce stockholders' liability.**

   Evidence *held* to show that an agreement by which one national bank took over the assets of another for purpose of liquidation constituted a loan and not a purchase of the assets by the bank receiving them, and that consequently it was a creditor entitled to enforce the liability of the shareholders of the liquidating bank.

2. **Appeal and error ⬤⟩323(2)—Shareholders' liability being several, any may appeal without joining others.**

   In a suit against a bank and shareholders to enforce a debt and shareholders' liability, defendants' liability being several and not joint, decree against them may be appealed from by one or more without joining others.

Appeal from the District Court of the United States for the Southern District of Georgia; Beverly D. Evans, Judge.

Action by the American National Bank of Macon against the Commercial National Bank of Macon and others as shareholders. From a decree adjudging plaintiff a creditor with consequent right of enforcing shareholders' liability, W. H. Hightower and others appeal. Affirmed.

Charles L. Bartlett, Robert L. Berner, Charles Akerman, Robert L. Anderson, John E. Hall, and Warren Grice, all of Macon, Ga. (Richard D. Feagin, Thomas E. Ryals, and Augustus O. B. Sparks, all of Macon, Ga., on the brief), for appellants.

Orville A. Park and George S. Jones, both of Macon, Ga. (Jones, Park & Johnston, of Macon, Ga., on the brief), for appellee.

Before WALKER and BRYAN, Circuit Judges, and SIBLEY, District Judge.

BRYAN, Circuit Judge. This is an appeal from a final decree establishing in favor of the American Bank of Macon, Ga., the statutory liability of appellants as shareholders of the Commercial National Bank of Macon, Ga.

Reference is made to the opinion of this court on a former appeal, reported in 254 Fed. 249, 165 C. C. A. 537, in which a decree of the District Court dismissing the bill was reversed, for a statement of the averments of the bill filed by appellee, and for the full text of the contract and resolutions pleaded and attached as exhibits.

[1] It was decided on the former appeal that the bill states a case. Whether the evidence supports the averments of the bill, as it is held to do by the decree now appealed from, is the only question presented by this appeal. If the evidence shows that the American Bank was a creditor of the Commercial Bank, it is admitted by appellants that the decree of the District Court is correct and should be affirmed. On the other hand, if the evidence shows that the American Bank was a purchaser of the assets of the Commercial Bank, it is admitted by appellee that the decree is erroneous and should be reversed.

In June, 1914, the Comptroller of the Currency complained of the condition of the Commercial Bank as disclosed by the report of a national bank examiner, and required the material reduction of large lines of credit extended to certain customers, and particularly to directors and corporations in which directors were interested. In July it was stated in a report by its finance committee that the bank was in need of $100,000 to make it above criticism; that money borrowed in excess of the amount permitted by law was about $60,000; and that its cash on hand was too low to be allowed to stand. Rumors as to the solvency of the bank became current, exchanges were held up, and remittances were not promptly made. Finally, on July 31, 1914, an appeal was made to the president of the American Bank for assistance. The officers of the two banks met, and after an all night session spent in considering the condition of the Commercial Bank, the two resolutions of August 1, 1914, were adopted. Thereafter, in pursuance of these resolutions, the contract of August 11, 1914, was entered into by authority of the boards of directors of the two banks, and the resolutions of August 12, 1914, and September 30, 1914, were adopted by the shareholders of the Commercial Bank. After August 1, 1914, the Commercial Bank transacted whatever business it did in the banking offices of the American Bank, but by its own officers, for more than two weeks at least, during which time the Commercial Bank paid its depositors largely with money furnished by the American Bank, but maintained and kept separate books and accounts. When it was necessary to secure funds from the American Bank, appropriate entries of debit and credit were made by the bookkeepers of the two banks.

Immediately after the adoption of the resolutions of August 1, 1914, the directors of the two banks caused advertisements to be inserted in the daily papers. That of the American Bank announced that a consolidation of the business of the two banks had been effected, that the assets of the Commercial Bank had been taken over by the American Bank, and that the latter would take care of all the business theretofore handled by the former; that the money on deposit with the Commercial Bank had been transferred to the American Bank, and that the latter would pay checks against the former; and that checks should be written on the blanks of the Commercial Bank until the depositors made other arrangements. The advertisement of the Commercial Bank announced that a merger of the two banks had been perfected; that all the assets of the Commercial Bank had been transferred to the American bank; that checks of customers upon the Commercial Bank would be honored by the American Bank; that depositors of the Commercial Bank should use the blank checks of that bank until they transferred their accounts to the American Bank, or made other arrangements; and that arrangements had been made to protect the interests of the stockholders of the Commercial Bank.

At the shareholders' meeting held August 12, 1914, objection was made to that provision in the contract executed the day before by the directors to the effect that shareholders of the Commercial Bank should not be relieved of their liability as such, for any deficit that

might remain after exhausting the other assets of the bank; but upon the statement being made that the American Bank insisted upon the provision remaining in the contract, the resolution containing it was unanimously adopted. According to the minutes of that meeting, one of the directors stated that the American Bank relied upon the statutory liability of the shareholders. The director shown by the minutes to have made this statement testified that he did not do so. The shareholders also appointed a committee to represent them in liquidating the assets of the Commercial Bank. At the meeting of the shareholders on September 30, 1914, a resolution was adopted in which it was recited that the transfer of the assets by the Commercial Bank to the American Bank was made as security. At this meeting the shareholders also formally placed the Commercial Bank in voluntary liquidation, and appointed the American Bank liquidating agent. The shareholders' committee represented the interests of the Commercial Bank and its shareholders in various ways. It corresponded with the Comptroller of the Currency and represented that the assets of the Commercial Bank were held as security by the American Bank; it authorized the sale of bonds to the amount of $300,000, which it claimed were owned by the Commercial Bank; it collected rents from the Commercial Bank building, made efforts to sell it, and failing to get a satisfactory price from others, finally sold it to the American Bank; it brought suits to enforce collections due to the bank, presented claims in favor of the bank in several bankruptcy proceedings. It also defended suits against the bank, in one of which, brought by shareholders for the appointment of a receiver, it set up the transactions between the Commercial Bank and the American Bank, but made no allegation or claim that the Commercial Bank had sold its assets. As late as April, 1915, it was considering the sale of unpaid notes to the American Bank.

It is averred in the fourth paragraph of the amendment to the bill that it was found to be impracticable to take notes "as had been contemplated by the resolutions," and it is then averred that it was agreed that the indebtedness of the Commercial Bank to the American Bank should be carried by the latter as an overdraft. The master found that the agreement alleged had not been proven, but also found that the indebtedness was in fact carried as an overdraft.

It is averred in the fifth paragraph of the amendment to the bill that for "some two weeks" after August 1, 1914, the Commercial Bank continued in active operation. The evidence showed and the master found that it cashed checks drawn on it, received deposits, cleared checks through the clearing house, checked on its deposits in other banks, collected notes, and renewed notes for its customers, for a longer period than two weeks.

It is averred in the sixth paragraph of the amendment to the bill that the board of directors of the Commercial Bank adopted a resolution, a copy of which was attached as an exhibit, accepting an offer from the American Bank to purchase the Commercial Bank building for the sum of $40,000, to be credited on the indebtedness of the Commercial Bank to the American Bank. The resolution did not ap-

pear in the minutes of the directors, and hence was not proven; but the testimony showed that the directors did in fact authorize the sale.

The master found that the transactions between the two banks did not constitute a sale of the assets of the Commercial Bank, but did constitute the American Bank the sole creditor of the Commercial Bank. The report of the master was confirmed by the District Court.

[2] Appellee moves to dismiss the appeal upon the ground that several defendants, as to whom a severance has not been had, have not joined in it.

The liability is several and not joint and may be appealed from by one or more defendants without joining others. Winters v. United States, 207 U. S. 564, 28 Sup. Ct. 207, 52 L. Ed. 340.

The motion to dismiss the appeal is therefore denied.

Appellants insist that this court held on the former appeal that the contract between the two banks, construed in the light of the resolutions, was ambiguous, and that appellee's right to recover was altogether dependent upon the conduct of the parties and the construction placed by them upon the contract and the resolutions upon which it was based. Proceeding upon that theory, it is argued that the evidence fails to prove the conduct of the parties alleged in the fourth, fifth, and sixth paragraphs of the amendment to the bill. But the contention is untenable that the opinion on the former appeal held that the contract was ambiguous. Both the contract and the conduct alleged in pursuance of it were discussed and the opinion was based upon both.

The averment of the fourth paragraph of the amendment that the indebtedness of the Commercial Bank was agreed to be represented by overdrafts instead of by notes is susceptible of proof by the undisputed fact that it was represented by that method. Of course, appellee loses the benefit that would have been derived from an agreement to give and accept notes.

The averment of the fifth paragraph that "for some two weeks" after August 1, the Commercial Bank continued in active operation, cashing checks, receiving deposits, and otherwise conducting a banking business, it appears to us, is sustained by the evidence. The fact that the business of the Commercial Bank was conducted in the banking house of the American Bank did not deprive the former bank of its character as a banking institution.

The averment of the sixth paragraph to the effect that a resolution was adopted by the directors of the Commercial Bank authorizing a sale of the bank building to the American Bank, the proceeds to be credited on the former's indebtedness to the latter, was not proven; and although it is true that the things were done which it is claimed the resolution authorized, yet the record evidence, in the form of a minute entry, of an acknowledgment of the indebtedness, became lost to appellee upon its failure to prove the resolution. The contract and various resolutions and the conduct of the parties throughout are all consistent with the theory of a loan. Although the resolution adopted by the American Bank on August 1, 1914, contemplated the purchase of

assets, it actually provided for advances upon collateral security. At the shareholders' meeting on September 30, 1914, only the pledge of assets was provided for, and a sale of assets was not. Likewise the provision for repaying advances with accrued interest to the American Bank is the most positive kind of evidence of a loan. The contention by appellants that the assets of the Commercial Bank were only intended to be pledged in the event the shareholders failed to ratify the resolutions and contract adopted and entered into by the directors on behalf of the two banks, or in the event the transaction should be attacked by suits, is not a reasonable or satisfactory one, in view of the general character of the provision which contains no such limitation. The correspondence with the Comptroller, the collection of rents on the Commercial Bank building, the bringing and defending of suits by the Commercial Bank and by the shareholders' committee, all show that the assets of the Commercial Bank, were held as security by the American Bank.

It is argued that the activities of the shareholders' committee is explained by the expectation that the stock would yield a return to the shareholders; but long before the committee of the shareholders ceased to exercise acts of ownership over the assets of the Commercial Bank, it had become apparent that there could not by any possibility be any value in the shares of stock held in the Commercial Bank. Indeed, it had become apparent that an assessment of shareholders·for the full amount of their statutory liability woud be insufficient to provide for the payment of the debts of the Commercial Bank. The transactions are inconsistent throughout with the theory of a sale. If the American Bank had purchased the assets of the Commercial Bank, there would have been no occasion for the insertion in the contract of a provision that the Commercial Bank should pay interest. It would have been most unusual, in that event, for the American Bank to have agreed to account to the Commercial Bank for an excess realized by it upon assets which it had purchased outright. Why would the shareholders' committee have passed a resolution in 1915 looking to the sale of the unpaid notes of the Commercial Bank to the American Bank, if the sale had taken place in 1914? If the assets of the Commercial Bank had been sold in 1914, why would the committee of the shareholders in 1915 be asserting or concerning themselves about the liability of debtors to the Commercial Bank who had become bankrupt? It is almost inconceivable that the share holders and their committee would repeatedly and continuously over a long period of time declare by resolution and show by their conduct that assets had only been pledged to secure a loan if it had been the fact that the entire assets had long since been sold.

The newspaper advertisements are not important. They were undoubtedly intended to bridge over a crisis and to allay any feeling of uneasiness on the part of depositors in the Commercial Bank. Neither party was estopped by anything stated in them from asserting any contractual right or obligation it possessed.

The excess of liabilities over assets of the Commercial Bank, amounting to more than the shareholders' liability of $300,000, has

been paid by the American Bank. There is no claim that credit was not given for the full value of these assets.

We are of opinion that the decree of the court is well sustained by the evidence, and it is therefore affirmed.