DERSCHEID et al. v. ANDREW, Superintendent of Banking of Iowa.

Circuit Court of Appeals, Eighth Circuit.
September 11, 1929.

No. 8437.

Seth Thomas and John M. Schaupp, Jr., both of Ft. Dodge, Iowa, for appellants.

Ben J. Gibson, of Des Moines, Iowa (Mc-Grath, Archerd & McGrath, of Eagle Grove, Iowa, on the brief), for appellee.

Before BOOTH, Circuit Judge, and SANBORN and DEWEY, District Judges.

DEWEY, District Judge. Appellee, receiver of the Citizens' State Bank of Eagle Grove, Iowa, commenced this action on October 11, 1927, as a creditor of the First National Bank of Eagle Grove, Iowa. The suit was in the nature of a creditors' bill wherein judgment is asked against said national bank, the imposition of an assessment upon its stock, and a judgment in the amount of such assessment as against the individual stockholders.

During the month of January, 1924, the First National Bank of Eagle Grove, Iowa, hereinafter referred to as the national bank, became involved to such an extent that it was unable to continue in business. On January 21, 1924, the board of directors of that bank and the board of directors of the Citizens' State Bank of Eagle Grove, Iowa, hereinafter referred to as the state bank, each authorized their respective presidents to proceed with negotiations with the object of taking over the business of the national bank by the state bank.

On January 23, 1924, after the conference between the officials of the two banks, an oral agreement or arrangement was entered into by such officers whereby the state bank assumed and agreed to pay all the liabilities of the national bank and took over all of its assets.

On January 23, 1924, the board of directors of the national bank authorized an assessment of 100 per cent. on its stockholders and authorized its officers to turn over and deliver to the state bank all its assets, together with the proceeds of the assessment.

On January 26, 1924, at a called meeting of the stockholders of the national bank, notice of said meeting having been given to all of the stockholders, a resolution was passed placing the national bank in voluntary liquidation under the provisions of sections 5220 and 5221, U. S. Rev. Stat. (12 USCA §§ 181, 182) to take effect July 15, 1924; and L. G. Focht, L. J. Clark, and H. F. Wasen were appointed a liquidating committee to act under the supervision of the board of directors, and providing that a special meeting of the stockholders may be called at any time in the same manner as if the bank continued an active bank. A proposed contract between the state bank and the national bank was discussed, and the meeting adjourned until July 14, 1924.

At the adjourned meeting of July 14, 1924, the proposed contract was again discussed and accepted.

This contract was substantially the same as the oral contract entered into between the officials of the two banks on January 23, 1924. It recited that on January 23, 1924, an emergency existed in the conduct and operation of the national bank due to inability to realize upon bills receivable; and that the board, deeming that the resources of the national bank would be conserved thereby, and that such action was for the best interests of the depositors, entered into an agreement with the state bank which, due to the emergency then existing, could not be set forth in a formal contract, and submitted for authorization by the stockholders thereof,

for the purpose of placing in written form said arrangement and to confirm the same in a formal contract, it is agreed as follows:

Paragraph 1 in general provides that the national bank has sold and transferred by indorsement to the state bank its bills receivable in the aggregate face amount of $313,-967.18.

Paragraph 2 in substance provides that the national bank is to sell and convey (a) the banking house for the agreed sum of $18,600; (b) other real estate, net proceeds therefrom to be credited to the national bank as sold and converted into money.

Paragraph 3, sells and transfers the other property and assets (a) sheriff's certificates of sale; (b) bank furniture and fixtures; (c) overdrafts; and (d) cash.

Paragraph 4, the national bank to prepare all formal transfers and conveyances necessary.

Paragraph 5, the state bank agrees to pay as follows: (a) All depositors of the national bank; (b) all rediscounts and bills payable of the national bank.

Paragraph 6, all adjustments of interest on the bills receivable and bills payable to be made as of January 23, 1924.

Paragraph 7, in case of renewals of bills receivable, the national bank to indorse renewal notes when taken on the forms of the national bank payable to it, and where the state bank elects to accept renewals upon its own forms payable to it the amount of all notes so renewed to be credited to the national bank.

Paragraph 8, property transferred to be held by the state bank together with indorsements of bills receivable, and together with a guaranty reserve fund until the state bank has realized the full amount of the obligations assumed.

Credits to be given the national bank as follows: (a) For the banking house $18,600 at once; (b) cash, upon receipt; (c) bills receivable, when paid; (d) bills receivable when renewed on state bank forms; (e) proceeds from the sale of other property when received.

Paragraph 9, by January 23, 1928, the state bank to furnish a list of bills receivable still held by it and not paid or renewed on its paper.

Agreed that the state bank will co-operate with the national bank and its liquidating committee to obtain security and assist in collections.

Paragraph 10, when assumed liability is terminated by payment, state bank is to surrender and transfer to the national bank or its liquidating agents all the remaining property; it being the intention that the state bank will receive out of the property transferred to it a sum equal to the obligations and liabilities assumed.

Paragraph 11, the capital stock of the national bank being $50,000, and believing that its capital is impaired, and that in due course an assessment will be ordered in accordance with law and the acts of Congress and that such assessment, if and when so lawfully imposed, will inure to the advantage and protection of the state bank because of the obligations assumed by the indorsement and transfer of the bills receivable; and because the state bank has assumed the liabilities of the national bank; and that by the agreement of January 23, 1924, a fund was created known as "reserve and guaranty fund" of about $42,000 by contributions made by various stockholders in sums equal to the amount of stock owned by them, it is agreed that said fund shall inure to and be held by the state bank and stand as security for all obligations of the national bank pending the imposition of an assessment upon the stockholders of the national bank to make good the impairment of its capital stock.

And the contract further provides that, in the event the assessment equals 100 per cent. as imposed in legal form, the stockholders contributing to the reserve and guaranty fund shall on the payment of such assessment be repaid by the state bank from such guaranty fund; and, in the event the assessment shall be made for less than 100 per cent., then a pro rata refund shall be made to those contributing to the guaranty fund.

Immediately following the oral agreement of January 23, 1924, the cash, cash items, and bills receivable were transferred to the banking house of the state bank, and an account opened by the state bank with the national bank, the notes and bills receivable being kept separate from the notes and assets of the state bank. Credit was given for the cash items on the account of the national bank, and credit was also given to the national bank of sums paid on the bills receivable to the state bank; and for all notes which were renewed, and such renewal taken on the forms and made payable to the state bank.

After the liquidating committee was appointed, one of its members, L. J. Clark, former cashier of the national bank, using one of the rooms of the state bank, had active charge of the collection of the bills receivable. He was paid by the state bank,

but such payment charged against the account of the national bank. L. G. Focht, president of the national bank, also assisted for about a month under the same arrangement as that with Mr. Clark.

The guaranty fund referred to in the contract consisted of notes aggregating about $41,000 which were turned over by individual stockholders of the national bank to the state bank under the arrangement set out in the contract. On these notes the sum of $12,600 was paid, and when paid the state bank issued and delivered to the stockholders making payment a certificate of deposit in an amount equal to the sum paid by him.

At the time of the commencement of the suit after giving all credits allowed by the terms of the contract on the books of the state bank to the national bank, there remained due the state bank from the national bank the sum of about $90,000 according to the books of the state bank.

On these facts being presented to the District Court, a decree was entered wherein the court found, among other things, as follows:

That the amount advanced by the state bank was primarily a loan by it to the national bank, and to the extent of the amount of money so advanced the state bank became a creditor of the national bank; that the state bank has given full credit for every item for which it was agreed credit should be given, and that there remains due the state bank and its receiver the sum of $80,574.69; that certain of the stockholders of the national bank had paid on the assessment so agreed to be levied certain sums in cash aggregating $12,600, and that credit should be given upon the assessment levied by the decree for the amount of cash so paid to the persons so paying.

The court further found that the contract and agreement entered into on the 23d day of January, 1924, was ratified by the board of directors of the national bank, and subsequently ratified by the stockholders of the national bank in stockholders' meeting; and that the agreement was reduced to writing and is substantially the same as the oral agreement entered into on the 23d day of January, 1924.

After allowance of certain credits, the court entered judgment against the First National Bank for $69,115.63, directed that an assessment be made against the stockholders who had not paid in their assessment in cash, and authorized a judgment as against them for the full amount of the stock assessment.

The facts are not greatly in dispute, and, having carefully considered the evidence, this court is satisfied with and approves the findings of fact by the trial judge hereinbefore set out.

Appellants' main contentions are that the court erred in holding that the appellee was a creditor of the defendant national bank, having a right to maintain this suit, and in the amount found due the state bank; and in not holding that the claims of the state bank were barred by the statute of limitations of Iowa.

Appellants in their claim that the alleged debts for which the assessment was made were not such as will sustain an assessment under the statute, especially as against those shareholders who did not actually participate in the stockholders' meeting of July 14, 1924, invoke the rule that:

The individual liability of the stockholders as imposed by and expressed by the statute is limited to contracts, debts, and engagements of such association as have been duly contracted in the ordinary course of its business, and that such liability ceases when the bank goes into liquidation, as there is no authority thereafter on the part of the officers of the bank to transact any business in the name of the bank so as to bind its stockholders, except that which is implied in the duty of liquidation, unless such authority has been expressly conferred by the stockholders. Schrader v. Mfs. Nat'l Bank, 133 U. S. 67, 10 S. Ct. 238, 33 L. Ed. 564; Richmond v. Irons, 121 U. S. 27, 7 S. Ct. 788, 30 L. Ed. 864; Andrew v. Dunn, 202 Iowa, 364, 210 N. W. 425; Peet v. Des Moines Sav. Bank, 190 Iowa, 1020, 181 N. W. 503; Moss v. Whitzel (C. C.) 108 F. 579; Warner v. Penoyer (C. C. A.) 91 F. 587, 44 L. R. A. 761.

The stockholders may show the transaction was not such as to impose any liability upon them. Wyman v. Wallace, 201 U. S. 230, 236, 26 S. Ct. 495, 50 L. Ed. 738.

However, a contract as here made is valid, and the state bank a creditor to whom the stockholders are liable, if made while the national bank was still in active operation and not thought to be insolvent. Hightower v. American National Bank, 263 U. S. 351, 44 S. Ct. 123, 68 L. Ed. 334; Wyman v. Wallace, 201 U. S. 230, 26 S. Ct. 495, 50 L. Ed. 738.

The cases cited and relied upon by appellants all have to do with questions as to the validity of obligations created after insolvency is declared and liquidation started. In such cases authority of the officers of the bank to contract debts in the ordinary course

of business of the bank is necessarily terminated.

When the state bank paid these obligations of the national bank, the transaction was the same as if it had advanced money to that bank to pay them. Wyman v. Wallace, 201 U. S. 230, 242, 26 S. Ct. 495, 50 L. Ed. 738.

The purpose was not to obtain money to engage in new business or to contract new and independent obligations during liquidation, but simply to change from many creditors to one. Nor was the contract made in derogation of the rights of shareholders. One of its purposes was to subserve their interests, and this was recognized when the stockholders ratified and confirmed it. Hightower v. American National Bank, 263 U. S. 357, 360, 44 S. Ct. 123, 68 L. Ed. 334.

Such a consolidation cannot be pronounced beyond the corporate powers of the bank. Wyman v. Wallace, supra; Aldrich v. Chemical National Bank, 176 U. S. 618, 20 S. Ct. 498, 44 L. Ed. 611.

A decision as to these matters, however, is not important in this case. Only seven stockholders representing 62 shares of the stock of the national bank have seen fit to appeal. It appears from the evidence that all of the appellants except George Correll and S. W. Morse were present at the stockholders' meeting of June 26, 1924, and voted in favor of ratifying the contract.

It is admitted, or at least there is no contention by appellants other than that those who participated in the stockholders' meeting on June 26, 1924, and the adjourned meetings thereafter, are estopped by their act to deny the validity of the contract. While as to the two appellants who were not at the meeting, they were notified of it, and had an opportunity to be present and express themselves, if they so desired.

Appellant Correll compelled the state bank by reason of its assumption of the debts of the national bank to take up a note which he held under a repurchase agreement; and both appellants, Correll and Morse, according to the statement by appellee, which is not denied by the appellants, permitted the state bank to pay their deposits in full. Having accepted benefits under the contract, these two parties cannot repudiate that contract without at least doing equity by tendering or offering to pay back the benefits which they had received thereunder.

Appellants also urge that the court should have allowed a credit to the national bank for the bills receivable which were renewed by Mr. Clark on forms of the national

bank, as such renewal notes were not indorsed by authority of the national bank, and because Mr. Clark had no authority to act in such renewals, but could only do so by authorization or in conjunction with the other two members of the liquidating committee; and because by the terms of the contract the state bank was to assist in the collection, and that Mr. Clark in making the renewals did so as an act of the state bank; and in accepting renewals exceeded his authority, and thereby released the national bank from any liability under its indorsement, especially as this was being done during the period of liquidation. We are unable to give our approval to any of these claims.

Mr. Clark, in the first place, was not an agent of the state bank. After the liquidating committee was appointed, its actions in the renewal of the notes complained of were all approved by the board of directors of the national bank, which continued to function and hold meetings on July 31, 1924, and in January, March, July, September, November, and December in 1925, and even in April and June in the year 1926.

The suit here is not to recover on liability created by the indorsement on the bills receivable of the national bank. The provisions in the written contract for the acceptance or nonacceptance by the state bank of its bills receivable was an arrangement between the banks as to the methods of paying off the indebtedness to the state bank. The liability of the national bank to the state bank was fixed by the contract itself. The method pursued was only a matter of detail, and could not and did not affect the liability of the national bank to the state bank, and no negligent act on the part of the liquidating committee could release such liability.

Under the provisions of the contract and its interpretation by the parties, the obligations assumed by the state bank were to be paid when, and only when cash was realized from the assets of the national bank and paid to it.

Appellants also claim that the court should have allowed a credit on the indebtedness of the national bank of $12,600 for the money paid into the guaranty fund. The provisions of the contract, however, controlled the rights of the parties, and it is readily apparent that it was a loan or contingent payment to meet an assessment if and when made. That assessment was legally made for the first time by this court, and the District Court was not in error in refusing to consider it as a voluntary payment for

which credit should be given to the national bank.

Other questions as to credits are argued, but, even if credits were allowed thereon, it would not affect the amount that the appellants are required to pay under the assessment.

Appellants seriously contend that the action is barred by the statute of limitations. This is based upon a statute of Iowa (Code 1927, § 11007, par. 3) that provides that causes of action shall be brought to recover for a "statute penalty" within two years after the cause of action accrues. It is argued that the cause of action in this case accrued more than two years prior to the commencement of the suit, and hence is barred by the provisions of the Iowa statute as being a *statute penalty*.

The statute of Iowa governs the time within which a suit can be brought against the stockholders for their double liability. Warner v. Citizens' National Bank (C. C. A.) 267 F. 661.

Accepting, but not admitting, that the cause of action did accrue within two years, we are unable to agree with appellants that the liability imposed upon the stockholders of the national bank is a statute penalty.

It may be that appellants' contention is correct that the liability of the stockholders is not contractual, but a liability imposed and impressed by the statute; but it does not necessarily follow from this that it is a statutory penalty.

We find no case that directly holds the liability impressed upon stockholders is a penalty under the Iowa statute, or that the Supreme Court of Iowa has so interpreted its own statute.

The rule is set out in 37 Corpus Juris at page 787 as follows:

"The terms 'penalties' and 'forfeitures,' as used in the various statutes of limitation, have been construed as having reference to penalties and forfeitures created by statute alone, and inflicted for derelictions of duty, or failure to perform specific acts, or for the commission of acts prohibited by statute."

We are clearly of the opinion that this action cannot be held as being a suit for the recovery of a penalty under the provisions of the statute of limitations of the state of Iowa. Woolverton v. Taylor, 132 Ill. 197, 23 N. E. 1007, 22 Am. St. Rep. 521; Warner v. Citizens' Nat'l Bank (8th C. C. A.) 267 F. 661.

The equities of the entire situation are with the receiver of the state bank. It is now clearly apparent that the national bank was, at the time it was taken over by the state bank, insolvent. The state bank paid all the liabilities of the national bank. The assets pledged were not of value sufficient to pay the indebtedness of the national bank. Under this situation there is a statutory liability of the stockholders, known to them at all times, to make up such deficiency of the indebtedness of the national bank to an amount equal to 100 per cent. of the par value of the stock owned by them in such national bank at the time it became insolvent.

The indebtedness which is sought to be recovered is not for new obligations incurred while the national bank was being liquidated, but is for an indebtedness originally incurred in the ordinary course of business while the national bank was active and considered solvent. And in enforcing this liability upon these stockholders they are but paying their just obligations.

This ruling and decision makes it unnecessary to consider appellee's motion to dismiss the appeal, but we find no merit therein. Hightower v. American Nat'l Bank (C. C. A.) 276 F. 371; Winters v. U. S., 207 U. S. 564, 28 S. Ct. 207, 52 L. Ed. 340.

The decree of the District Court and the judgments therein are found to be correct, and are hereby affirmed.