AMERICAN NAT. BANK OF MACON v. COMMERCIAL NAT. BANK OF MACON et al.

(District Court, S. D. Georgia, W. D.   November 8, 1917.)

No. 25.

BANKS AND BANKING ☞64—VOLUNTARY LIQUIDATION—TRANSFER OF BUSINESS AND ASSETS—CONSTRUCTION OF CONTRACT.

A resolution of the directors of the Commercial National Bank provided for its liquidation by and consolidation with the American National Bank of the same city, and the transfer of its business and all of its assets to the American to secure the latter for all advances made in the payment of the liabilities of the Commercial, which it was to assume. It was also to liquidate the assets of the Commercial, without charge for its services, and account to the stockholders for any surplus. By a complementary resolution of its directors, the American agreed to accept the proposal if, "in the estimation of the officers" of the American, the assets of the Commercial were sufficient in value to protect and secure it for payment of the debts of the Commercial. The transfer was made and accepted by the American, and afterward a memorandum contract was entered into between the two banks, reciting that it was to carry out the purposes of the resolutions of their respective directors. By this contract the American agreed to pay the indebtedness of the Commercial, which was definitely stated, and hold its assets as security, and to liquidate the same in accordance with

the prior resolutions. The Commercial agreed to secure a ratification of the liquidation by its shareholders, which was done and approved by the Comptroller. *Held*, that the contract must be construed as a whole, and in the light of the resolutions which it was intended to carry out, and which measured the rights and obligations of the parties; that, so construed, it created no relation of debtor and creditor between the two banks, but was in effect a purchase by the American of the business and assets of the Commercial, in consideration of the payment of its debts and the accounting for the excess of assets, if any.

In Equity. Suit by the American National Bank of Macon against the Commercial National Bank of Macon and its shareholders. On motion to dismiss bill. Motion sustained.

Hardeman, Jones, Park & Johnston, of Macon, Ga., for plaintiff.

Hall & Grice, Feagin & Hancock, and W. D. McNeil, all of Macon, Ga., W. A. Dodson, of Americus, Ga., R. L. Berner, C. L. Bartlett, Minter Wimberly, E. P. Mallary, and Jordan & Lane, all of Macon, Ga., Green F. Johnson, of Monticello, Ga., and C. M. Huguley, for defendants.

EVANS, District Judge. The American National Bank exhibits its bill against the stockholders of the Commercial National Bank, in behalf of itself and other creditors, if any, of the Commercial Bank. The Commercial Bank is not sued, and the action against its stockholders is founded on Act Cong. June 30, 1876, c. 156, § 2 (Rev. Stat. § 5151 [U. S. Comp. Stat. 1916, §§ 9689, 9807]), giving federal courts original jurisdiction in equity of a creditors' bill against stockholders of a national bank. The primary and controlling question is the relation between the two banks, resulting from their contract for the liquidation of the Commercial by the American. The action is not maintainable, unless that contract and what was done under it make the American National Bank the creditor of the Commercial National Bank.

The contract recites that it was entered into by the banks to carry out the purposes of the resolutions of the directors of the respective banks, and the subject-matter and terms of those resolutions necessarily must control the interpretation of the contract executed in pursuance of them. The resolution of the directors of the Commercial National Bank authorized (1) the officers of that bank to commence proceedings for its liquidation and for consolidation with the American National Bank; (2) in pursuance of such purpose to transfer to the American National Bank all of the assets of the Commercial; (3) which assets were transferred by the resolution to fully protect and secure the American for all moneys advanced or to be advanced in the payment of the liability of the Commercial; (4) the resolutions contemplated in consideration of the foregoing that the American (a) should take over the business of the Commercial; (b) liquidate its assets; (c) account to the shareholders of the Commercial for any excess of proceeds of assets over liabilities, without charge for its services.

The resolution of the directors of the American is the complement of that of the Commercial. The American National Bank, by resolution of its directors, assumed the liabilities of the Commercial National on condition (1) that the assets of the Commercial transferred be sufficient in amount and in value, "in the estimation of the officers of the American National Bank," to fully protect and secure the American for all payments made of the debts of the Commercial which it assumed.

It appears to me, from these resolutions, that the directors of the Commercial Bank realized that it was the course of prudence to liquidate its business through the medium of the American Bank by a transfer of all its assets, which were deemed by them to be of greater value than the amount of its liabilities. The directors of the American were willing for that bank to become the liquidating agent, and to assume the payment of the debt of the Commercial on condition that the directors of the American estimated such assets to be sufficient to pay all the debts of the Commercial. If the directors of the American deemed the assets of the Commercial sufficient for that purpose, the American was to take over the business of the Commercial, all of its assets by transfer, and to assume all of its debts, and advance the necessary money to pay these debts, and reimburse itself out of the funds realized from the assets of the Commercial, and pay over the excess, if any, to the stockholders of the Commercial, without charge for its services. This seems to me to have been the plain intent of the parties in making this contract.

The structure of the resolutions reflect the attitude of the respective boards of directors. The directors of the Commercial felt that, though the exigency was such that the Commercial could not continue as an active banking agency, it was solvent, and that the American would be willing to take over its business, pay its debts in advance of realizing on the assets, and account for the excess of assets over the liabilities to the stockholders, without compensation for its services, in return for the patronage of the customers of the Commercial. The American was willing to accept the offer of the Commercial on condition—not that the assets of the Commercial actually would be sufficient to reimburse itself for advances to pay the Commercial's liabilities, but on condition that such assets be "sufficient in amount and in value in the estimation of the officers of the American National Bank to fully protect and secure said association (American) for any and all amounts, payment of which was assured under said resolution." With this purpose in mind the two banks entered into the contract which we are called on to construe.

I do not suspect that the directors of either bank thought there would be a deficiency in the Commercial's assets. Both banks were located in the same city, and the directors of the American were fully competent to estimate the worth and value of the Commercial's paper. The American evinced a desire to enter into the transaction, if its directors estimated the assets of the Commercial to be sufficient to pay all of its liabilities. The resolutions did not contemplate that the relation of

creditor and debtor should exist between the banks. Indeed, both sets of resolutions contemplate that the American should take over all the assets of the Commercial and all of its business. Nothing was left from which the Commercial could pay anything. Bereft of business and of assets, it presented a sorry plight for a debtor who was expected thereafter to pay a substantial sum.

These facts appear from the resolutions. They cannot be disregarded when we come to the interpretation of the contract. As was said by Mr. Justice Clifford in Nash v. Towne, 5 Wall. 689, 699, 18 L. Ed. 527:

"Courts, in the construction of contracts, look to the language employed, the subject-matter, and the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed, and, in that view, they are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, and so to judge of the meaning of the words and of the correct application of the language to the things described."

The first paragraph contains words appropriate to a formal transfer of all of the assets of the Commercial to the American, with warranty of title. The second and third paragraphs contain promises that the Commercial Bank will call a meeting of its stockholders, to provide for the liquidation of its affairs, agreeably to sections 5220, 5221, and 5223 of the Revised Statutes (Comp. St. 1916, §§ 9806, 9808, 9810), and "consolidating same with the American National Bank of Macon by purchase of the assets of said Commercial National Bank by the American National Bank, but without providing for stock in the American National Bank to be issued to the shareholders of the Commercial National Bank." The bill alleges that such a meeting of the stockholders of the Commercial was called, and at that meeting a resolution was adopted by a vote of more than two-thirds of the stockholders, placing the Commercial bank in voluntary liquidation, which resolution was duly approved by the Comptroller of Currency. The fourth paragraph contains a covenant that the Commercial will maintain its corporate existence until final liquidation and settlement with its shareholders. This provision is superfluous, as there is no necessity of a contract to preserve the corporate existence under such circumstances. Central Bank v. Connecticut Mut. Life Ins. Co., 104 U. S. 54, 26 L. Ed. 693. The fifth paragraph contains the promise of the American to pay the liabilities of the Commercial. The sixth and last paragraph contains the American's express acceptance of the appointment of liquidating agent and its promise to proceed with due diligence to collect and reduce to cash all of the Commercial assets:

"All of the assets of said association to be held as security by said American National Bank for all advances made by it in paying the depositors and other liabilities of said Commercial National Bank, and the actual expenses incurred by said American National Bank in realizing on said assets, and that, after deducting from the proceeds of said assets the actual expenses incurred by said American National Bank in liquidating said association and acting as liquidating agent and in collecting said assets and realizing upon the same,

it will apply the proceeds: First, in repaying to itself all amounts advanced by it hereunder, with interest thereon at the rate of seven (7%) per cent. per annum; next, in discharging the liabilities of said Commercial National Bank which shall not have been paid by advances made by said American National Bank; and that when all of said liabilities have been fully discharged, it will fully account to the shareholders of said Commercial National Bank and from time to time pay over to said shareholders pro rata the surplus remaining in its hands from the proceeds of said assets, said American National Bank to act as liquidating agent without compensation for its own services."

This paragraph also provided that, in the event the liquidation should be interrupted for any reason beyond the control of the American National Bank, the American National Bank "shall and does hold all of the assets of said Commercial National Bank as security for the advances which may have been made by it, up to the time such liquidation may be so discontinued," and further provided that neither the resolutions of the boards of directors nor the contract shall relieve the shareholders of their legal liability to respond, in the event it may be necessary to have recourse upon such shareholders' liability, for any deficit which may remain after exhausting the other assets of the Commercial in the payment of its liabilities.

Paragraphs 1 to 5, inclusive, are in harmony with the plain intent of the resolutions that the American is to take over the Commercial's assets and business as a purchaser and liquidating agent, and not as a creditor. It must be confessed that some of the language in the sixth paragraph, taken by itself, may be somewhat incongruous with the purpose as expressed in the resolutions of the boards of directors; but all parts of a contract must be construed together in its interpretation. The sixth paragraph begins with an express acceptance by the American of the appointment as liquidating agent of the Commercial. The assets of the Commercial were already in possession of the American when the contract was signed. These assets come into the American's possession by force of the resolution of its directors, which authorized the transfer to them and the assumption by the American of the Commercial's liabilities, upon condition that the American's directors estimated them "sufficient in amount and value" to pay the Commercial's liabilities. The American's directors had acted, and had fulfilled the condition; the trade was closed; the assets were turned over, and the Commercial had ceased to do business; and the contract was intended to be a memorial of the transaction as authorized by the resolutions of the directors of the two banks. The American was desirous of absorbing the business of the Commercial, with its consequent advantages. It was willing to liquidate the Commercial's affairs by advancing its own money to pay the Commercial's debts, and to account and pay over to the shareholders of the Commercial whatever excess of assets over liabilities there might be. But, before any excess could arise, the American was to repay or reimburse itself for the interest on the money advanced by it before it realized on the Commercial's assets. The amount of the debts of the Commercial which the American assumed was definitely stated; these debts were to be paid at once by the American. This amount, plus the addition of interest accruing intermediate

the time of payment and the time of realizing on the assets of the Commercial was the money consideration of the transfer of the Commercial's business and assets to it. Any excess from the realized assets would go to the Commercial's shareholders, and the American agrees to account for same. There are no words in the contract that the money advanced by the American is to be a loan to the Commercial; there are no words of defeasance in the contract appropriate to a construction that the assets were taken over as a pledge; and when we consider that the parties expressed in their contract that the American was to take over the business of the Commercial, which included its good will and right to do business, we cannot conclude that this most valuable and important benefit to the American was to be acquired and enjoyed by it as security for a loan of money. The contract strips the Commercial of every attribute of a going concern. When the contract was made, the Commercial's business, its assets, and all of its available financial resources became the property of the American Bank. The Commercial remained but a legal myth, without tangible qualities evidencing its existence. I do not think that an implication can be drawn that this phantom of the law was expected to respond to the payment of a debt utterly beyond its power to meet. Verbal inaccuracies in a contract must yield to the manifest intent of the parties as gathered from the four corners of the instrument.

It is argued that the provision for holding the assets of the corporation as security for money advanced in the event of a discontinuance of the liquidation for any reason beyond the control of the American is inconsistent with the conclusion we have reached. It will be borne in mind that at the time the contract was made the Commercial's assets were in the hands of the American Bank, though the shareholders of the Commercial had not assented to the bank's liquidation. Only shareholders may authorize the liquidation of a national bank. The contract was made by the directors in advance of and in contemplation of the shareholders' action, and this clause very probably was inserted as a precaution against a contingency that might nullify the transfer as a purchase because of lack of power in the directors to liquidate the bank. Be that as it may, the bill alleges that the shareholders of the Commercial did ratify the contract, and no lack of power on the part of the directors to make the contract is presented.

The disclaimer of release of the shareholders from their statutory liability is without particular significance. The directors had no power to release them, and at most this clause is but a disclaimer that their contract is not intended to have such effect.

Several cases have been cited in the argument bearing on the question: Wyman v. Wallace, 201 U. S. 230, 26 Sup. Ct. 495, 50 L. Ed. 738; Richmond v. Irons, 121 U. S. 27, 7 Sup. Ct. 788, 30 L. Ed. 864; George v. Wallace, 135 Fed. 286, 68 C. C. A. 40; Schofield v. State Nat. Bk., 97 Fed. 282, 38 C. C. A. 179. I have carefully examined these cases, and have derived much benefit from them in construing this contract. All of them have distinguishing features. Every contract possesses its own individuality, and similar contracts which have

been construed by courts are only to be looked to as to shedding light upon the particular contract under review. After careful consideration, I have reached the conclusion that, under the resolutions of the directors of the two banks and the contract, the American purchased the business and assets of the Commercial, and assumed all of the latter's debts, and further agreed to refund (if any) the excess to be realized from the Commercial's assets after reimbursing itself for the sum paid in extinguishment of the Commercial's debts, with interest; that under the contract no relation of debtor and creditor was created or intended to be created; that the shareholders of the Commercial are not individually liable under the statute to the American Bank for the deficiency between the amount it expended in payment of the debts of the Commercial assumed by it and that realized from a conversion into cash of the Commercial's assets.

Let an appropriate order be prepared, sustaining the motion to dismiss the bill.