## HIGHTOWER ET AL. v. AMERICAN NATIONAL BANK OF MACON, GEORGIA.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 25. Argued January 25, 1923.—Decided December 3, 1923.

1. A contract between two national banks under which the assets of the one were transferred to the other and the latter assumed the liabilities of the former and advanced money, in excess of the assets, to pay the liabilities and expenses, *construed* as intending, not a sale, but a pledge of the assets, as security for repayment of the money advanced. Pp. 353, 358.

2. Where a national bank, in financial difficulty, but still in active operation and not thought to be insolvent, to protect the interests of its creditors and shareholders made a contract by authority of its directors with another national bank, whereby the second bank assumed the liabilities of the first, took over its assets as security, and paid the debts by means of the assets and its own funds, acting finally as liquidating agent after the shareholders of the first bank had ratified the contract and ordered liquidation under Rev. Stats., § 5220,—*held*, that the contract was valid; and that the claim of the second bank for money advanced in excess of the assets was not created during the liquidation but was a debt arising under the contract for which the shareholders of the liquidated bank were liable under Rev. Stats., § 5151, as amended. P. 360.

276 Fed. 371, affirmed.

APPEAL from a decree of the Circuit Court of Appeals, which affirmed a decree of the District Court awarding

recoveries to the appellee bank, as plaintiff, in its suit to enforce the liabilities of the defendants (here appellants) as shareholders of another national bank.

*Mr. John E. Hall*, with whom *Mr. Charles L. Bartlett, Mr. Charles Akerman, Mr. Richard C. Jordan, Mr. Thomas E. Ryals, Mr. Robert L. Anderson, Mr. Warren Grice, Mr. Charles J. Bloch* and *Mr. A. O. B. Sparks* were on the brief, for appellants.

*Mr. Orville A. Park*, with whom *Mr. George S. Jones* was on the brief, for appellee.

Mr. Justice Van Devanter delivered the opinion of the Court.

This is a suit in equity, in the nature of a creditor's bill, against a national bank and its shareholders to enforce the liability of the shareholders for the bank's debts. The plaintiff is another national bank and sues on behalf of all creditors, although insisting it is the only one. The District Court dismissed the bill as not stating a cause of action, 246 Fed. 721, and 248 Fed. 187; but the Circuit Court of Appeals thought the bill good and reversed that decree. 254 Fed. 249. The defendants answered; the evidence was taken before a master and reported with advisory findings, and a decree was entered by the District Court establishing the plaintiff's claim as a debt—the only unsettled obligation—of the defendant bank, and awarding recoveries from the several shareholders in sums conforming to their holdings. That decree was affirmed by the Circuit Court of Appeals, 276 Fed. 371, and the defendants appealed to this Court.

The record is a large one and shows that the parties brought out everything of an evidential character bearing on the issues. On all questions of fact the master and the two courts below were in full accord, and there was ample evidence to sustain their findings.

Both banks were located at Macon, Georgia, the plaintiff being known as the American National and the other as the Commercial National.  In the summer of 1914 they entered into a contract looking to a winding up of the affairs of the Commercial National, and providing for a transfer of its assets to the American National and the assumption and payment of its liabilities by the latter.  When the suit was brought all that was to be done under the contract was practically completed, save that the obligation, if there was such, to reimburse the American National for advancing moneys to pay the Commercial National's liabilities had not been fulfilled.

The questions presented to us for decision turn largely on the construction and legal effect of the contract and are, first, whether the transfer of the Commercial National's assets was made by way of an outright sale, or by way of giving security for the repayment of the moneys advanced by the American National under the contract, and, secondly, if repayment was required, whether that is a debt or engagement for which the Commercial National's shareholders are liable.

The statutes in connection with which the contract and these questions must be examined are as follows:

" The shareholders of every national banking association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares."  Rev. Stats., § 5151; Act December 23, 1913, c. 6, § 23, 38 Stat. 273.

" Any [national banking] association may go into liquidation and be closed by the vote of its shareholders owning two-thirds of its stock."  Rev. Stats., § 5220.

" When any national banking association shall have gone into liquidation under the provisions of section five

thousand two hundred and twenty of said statutes, the individual liability of the shareholders provided for by section fifty-one hundred and fifty-one of said statutes, may be enforced by any creditor of such association, by bill in equity, in the nature of a creditor's bill," etc. Act June 30, 1876, c. 156, § 2, 19 Stat. 63.

The contract was made in pursuance of resolutions passed by the directors of both banks, and was ratified and approved by a resolution of the Commercial National's shareholders. These resolutions and the contract are all set forth at length in the opinion of the Circuit Court of Appeals delivered on the first appeal to that court, 254 Fed. 249, and need not be reproduced here.

The primary purpose in what was done was to relieve the Commercial National from an existing embarrassment, to conserve its assets and to subserve the interests of its creditors and stockholders. That bank, although having assets thought at the time to be in excess of its liabilities, was in need of very substantial assistance. It had made excessive and improvident loans, had borrowed beyond an admissible limit, had permitted its available cash to fall below a reasonable minimum, had been criticised by the Comptroller for these departures, had become the subject of disturbing rumors and was not in condition to withstand a run by depositors. It had sought assistance from the American National, and the latter had manifested a disposition to help within prudent limits. Various courses had been informally suggested without receiving definite approval, among them being a voluntary liquidation of the Commercial National under the statute before cited, a consolidation of the two banks, an outright sale of the Commercial National's assets to the American National at an agreed or fixed valuation, and a transfer of the assets, or a large part of them, to the American National as collateral to secure repayment to it of moneys to be advanced by it to meet the Com-

mercial National's needs. All of these proceeded on the theory that the depositors and other creditors of that bank should be paid as and when payment was demanded; that money in large amounts would be required for the purpose, and that the money should be provided or obtained in a way which would permit an orderly and advantageous realization on the Commercial National's assets and not involve any sacrifice of their real value.

The resolution of the directors of the Commercial National, as also that of the directors of the American National, was passed August 1, 1914; the contract was signed August 11, and the ratifying resolution of the Commercial National's shareholders was passed September 30.

The resolution of the Commercial National's directors left the questions of voluntary liquidation and consolidation to the consideration and action of the shareholders, but expressly authorized the bank's officers to transfer all of its assets to the American National "as cash" (meaning at an agreed or fixed cash valuation) or "as collateral" to secure that bank for moneys "advanced" to pay liabilities of the Commercial National; "the details" being committed "to the discretion" of such officers and they being empowered to enter into any necessary or appropriate contract. The resolution of the American National's directors said nothing about consolidation and only incidentally referred to voluntary liquidation, but expressly assented to the assumption and payment by that bank of the liabilities of the Commercial National "upon condition" that the latter transfer to the American National "as cash or collateral" sufficient assets to afford it full and satisfactory protection. This resolution, like the other, committed the adjustment of details to the discretion of the bank's officers.

Immediately following the adoption of these directors' resolutions the Commercial National's assets were deliv-

ered into the custody or keeping of the American National, but were not delivered "as cash" or at an agreed or fixed valuation. Thereupon, and on the faith of such delivery, the American National began advancing moneys with which to pay depositors and other creditors of the Commercial National.

The contract, signed ten days later, recites the substance of the directors' resolutions, but refers to them as authorizing a transfer of the assets "as security", instead of "as cash or security." It further recites that "the assets of the Commercial National have been delivered to the American National" and then in six numbered paragraphs proceeds to state the terms and details of the engagement. The first paragraph purports to transfer all the assets in present terms, contains no qualifying words, and, when taken alone, appears to pass the title absolutely and without reservation. The second and third paragraphs declare that the officers and directors of the Commercial National will call a meeting of its shareholders and procure from them resolutions (a) providing for the liquidation of that bank under the statute, (b) authorizing the consolidation of the two banks "by the purchase of the assets of the Commercial National by the American National," but without the issue of stock in the latter to the shareholders of the former, (c) ratifying and confirming the action of the Commercial National's directors before recited and "this contract," and (d) designating the American National as liquidating agent to conduct the liquidation of the Commercial National according to the statute and under the supervision of the Commercial National's directors. The fourth paragraph provides that the Commercial National shall maintain its corporate existence until the completion of its liquidation. The fifth paragraph declares without qualification that the American National assumes and promises to pay, as and when payment is demanded, all

the liabilities of the Commercial National, including the redemption of its circulating notes.   The sixth paragraph, which obviously is explanatory of some of the others, particularly of the first and fifth, reads as follows:

"VI. That said American National Bank will accept the appointment as liquidating agent of said Commercial National Bank, and will proceed with all due and reasonable diligence to liquidate said association and to collect and reduce to cash all the assets of said association, all of said assets to be held as security by said American National Bank for all advances made by it in paying the depositors and other liabilities of said Commercial National Bank and the actual expenses incurred by said American National Bank in realizing on said assets; and that after deducting from the proceeds of said assets the actual expenses incurred by said American National Bank in liquidating said association and acting as liquidating agent and in collecting said assets and realizing upon the same, it will apply said proceeds, first, in repaying to itself all amounts advanced by it hereunder, with interest thereon at the rate of seven (7%) per cent. per annum; next, in discharging the liabilities of said Commercial National Bank which shall not have been paid by advances made by said American National Bank; and that when all of said liabilities have been fully discharged it will account to the shareholders of said Commercial National Bank and from time to time pay over to said shareholders pro rata the surplus remaining in its hands from the proceeds of said assets; said American National Bank to act as such liquidating agent without compensation for its own services.

" It being distinctly agreed and understood that in the event the said liquidation should be interrupted or discontinued for any reason beyond the control of said American National Bank, then and in that event said American National Bank shall and does hold all of the

assets of said Commercial National Bank as security for the advances which may have been made by it, up to the time such liquidation may be so discontinued.

" And it being further distinctly agreed and understood that neither 'the resolutions of said boards of directors of said associations nor this contract shall relieve the shareholders of the Commercial National Bank from their legal liability as shareholders to respond, in, the event it may be necessary to have recourse upon such shareholders' liability, for any deficit which may remain after exhausting the other assets of said association in the payment of its liabilities."

The appellants lay some emphasis on what is said in the second and third paragraphs about procuring from the shareholders a resolution authorizing a consolidation of the two banks by one purchasing the assets of the other. But we think it is of no importance here. In itself it could have no force save as a solicitation of action by the shareholders. They did not respond to it. No such resolution was adopted, and the tentative proposal failed. The reason is apparent. The shareholders' meeting was had fifty days after the contract was signed. In the meantime the Commercial National's affairs had been subjected to close examination and found to be such that a consolidation was not at all feasible. At that meeting, however, the shareholders did, by a vote representing two-thirds of all the shares, ratify and confirm the contract, put the bank into voluntary liquidation under the statute, designate the American National as liquidating agent and appoint a committee of five shareholders to advise with and assist the liquidating agent and directors throughout the course of the liquidation.

The chief contention of the appellants is that the transaction between the two banks was not a pledging or hypothecation of the assets as security for the repayment of advances to pay liabilities, but an outright sale of the

assets in consideration of an unqualified assumption of the liabilities. We agree with the Circuit Court of Appeals in thinking the assets were not sold but pledged as security.

It is quite true that the first and fifth paragraphs of the contract, if separated from the others, make for the view that the transfer of assets and the assumption of liabilities were without qualification or reservation,—each as the full consideration for the other. But the contract consists of much more than those paragraphs and must be examined as a whole to determine the nature of the transaction of which it is a memorial. In the sixth paragraph the parties definitely explain the purpose with which the assets were transferred and the nature of the engagement by which payment of the liabilities was assumed. That paragraph cannot be disregarded. To do so would be much like determining the nature and effect of a mortgage deed without considering the defeasance clause. The paragraph shows that the American National was to hold the assets " as security " for " all advances " made by it to pay liabilities and expenses; that it was to reduce the assets to cash with reasonable diligence and apply the proceeds in " repaying " " all amounts advanced" by it "with interest" added, and that if, for any reason beyond its control, the liquidation should be discontinued, it should hold the assets " as security " for its " advances " up to that time. The paragraph also recognizes that in the end there might be either a surplus or deficiency of proceeds from the assets, and deals with both contingencies,—with a possible surplus by directing that the same be paid to the Commercial National's shareholders pro rata, and with a possible deficiency by declaring that neither the directors' resolutions nor the contract " shall relieve the shareholders " from their " legal liability as shareholders to respond." The rational and necessary conclusion from these provisions is that the

moneys advanced were loaned and were to be repaid with interest, that the assets were transferred as security fo. such repayment and that the resulting relations between the banks were those of debtor and creditor and pledgor and pledgee.

The Circuit Court of Appeals fortified its conclusion in this regard by showing that throughout the period in which the contract was in process of execution the officers of the two banks, their directors and the shareholders' committee of the Commercial National put a like construction on it. We agree that this is so, but extended comment on that course of action would serve no purpose, because, in our opinion, the contract as a whole does not admit of any other construction.

The remaining contention is that the debt sought to be enforced was created during the process of liquidation, and therefore is not one for which the shareholders are liable. The premise is faulty. The debt arose from the contract and represents moneys advanced in excess of what was realized from the assets. When the contract was made the bank was in active operation, and it remained so for a short period thereafter. It was cashing checks, receiving deposits, clearing checks through the clearing house, checking on its deposits in other banks and otherwise conducting a banking business. True, its business was conducted in quarters assigned to it in the banking house of the American National, but it was acting through its own officers, tellers and employees. It had not been pronounced insolvent, nor was it then thought to be so. The process of liquidation under the statute began fifty days after the contract was made. There was power to make the contract. The purpose was not to obtain money to engage in new business, but simply to change from many creditors to one. Nor was the contract made in derogation of the rights of the shareholders. One of its purposes was to subserve their interests, and this

was recognized when they ratified and confirmed it. Under prior decisions the contention must fail. *Wyman v. Wallace,* 201 U. S. 230; *Poppleton* v. *Wallace,* 201 U. S. 245.

The amount of the debt is not questioned.

*Decree affirmed.*