## American National Bank et al., Appellees, v. Fred Holsen et al., Appellants.

BANKING—*who not a creditor entitled to enforce stockholders' liability for bank debts.* Where a national bank by contract takes over such of the assets of an insolvent state bank as it is lawfully permitted to do, and assumes the liabilities of the state bank except the liability of that bank to its shareholders, the contract providing for no liability against the state bank other than its guaranty of the payments of the assets taken over and except that an indemnity bond is given to the national bank to save it from loss for assuming the liabilities, the national bank is not a creditor of the state bank and is not entitled to enforce the constitutional and statutory liability of the state bank stockholders for the debts of that bank, the contract being silent as to such liability of the stockholders, and it not appearing but that the national bank received full payment on the assets taken over.

American Nat. Bank v. Holsen, 245 Ill. App. 59.

Appeal by defendants from the Circuit Court of Wabash county; the Hon. C. H. MILLER, Judge, presiding. Heard in this court at the October term, 1926. Reversed. Opinion filed April 15, 1927. Rehearing denied July 29, 1927.

P. J. KOLB and M. J. WHITE, for appellants.

GEO. W. LACKEY, GEE & GEE, C. F. BRIAN and BEN H. TOWNSEND, for appellees.

MR. PRESIDING JUSTICE BARRY delivered the opinion of the court.

Appellees, as alleged creditors of the First State Bank of Mount Carmel, Illinois, filed a bill against appellants and the other stockholders of the said bank to enforce their constitutional and statutory liability for the debts of the corporation. Hereafter we will refer to that bank as the State Bank, and to appellee, American National Bank, as the National Bank. The bill avers that on October 30, 1923, the State Bank was insolvent and unable to meet its obligations to its depositors and creditors; that on November 7, 1923, its stockholders adopted a resolution to the effect that the condition of its business was such that it was better to discontinue business and liquidate its affairs. The bill avers that the National Bank submitted a proposal to take over so much and such parts of the assets of the State Bank as were permissible under the banking laws and the regulations of the Comptroller of the Currency and to assume the liabilities of the State Bank, except its liability to its shareholders, and to assist in the liquidation of its affairs through representation on a liquidation committee to be composed of the cashier of the State Bank, the president of the National Bank and a third member to be appointed by the directors of the State Bank from its shareholders.

The bill avers that the stockholders of the State Bank adopted a resolution reciting the terms of the proposal of the National Bank; that the same should be

accepted upon the terms and conditions contained therein; that the board of directors be and are hereby authorized and directed to enter into a proper contract with the National Bank for the assumption of the liability of the State Bank to its depositors and other creditors, according to the tenor of said proposal, the transfer to the National Bank of such of the assets as it has proposed to accept, in the way and manner provided in said proposal, and to guarantee on behalf of the State Bank the payment of all notes, bonds and other securities so transferred; to enter into bond or contract on behalf of the State Bank and its shareholders, guaranteeing the National Bank against and agreeing to save it harmless from any pecuniary loss or damage on account of the assumption by it of the liabilities of the State Bank; that the board of directors be authorized to assent to the appointment of the liquidating committee, as provided in said proposal, and to appoint such committee to be composed of members, as provided in said proposal, with full power and authority to carry out the provisions of such contract as may be entered into with the National Bank for the taking over of the permissible assets and assuming the liabilities of the State Bank to the extent and upon the conditions contained in said proposal; to authorize the conveyance of the real estate of the State Bank to such liquidating committee, to be held by it as trustee for both banks for the purpose of giving effect to the provisions of said proposal and to the end that the affairs of the State Bank may be fully and speedily liquidated and the liabilities of it and those of its shareholders fully discharged.

The bill then avers that on November 10, 1923, the board of directors of the State Bank authorized the execution of the contract referred to in the resolution aforesaid and said contract is set out in full. It is too lengthy to quote in this opinion, but it provides for the

transfer to the National Bank of all of the assets of the State Bank, which under the National Banking Laws and Regulations of the Comptroller of the Currency it will be allowed to carry, being all of the assets of the State Bank except its real estate, furniture and fixtures, and such of its notes, bonds and other securities which may be considered worthless or not sufficiently secured; that all of the assets which are not transferred to the National Bank shall be transferred to the liquidating committee composed of the three named persons who shall dispose of the same and the money received shall be applied by such committee to the discharge of the liabilities of the State Bank, in so far as may be necessary and when all such liabilities have been so discharged, the residue shall be paid over to the State Bank for its shareholders; that such committee shall hold such assets as are transferred to it as trustee for the two banks, for their use, according to their rights.

The contract further provides that in consideration of the transfer and delivery to the National Bank of the assets of the State Bank as aforesaid, and of the transfer of the other assets to said committee to be held in trust as aforesaid, and in consideration of the agreement therein contained for the indemnification of the National Bank, it agrees to assume, and does assume, all of the liabilities of the State Bank, except its liabilities to its shareholders, and agrees to assist in liquidating the affairs and business of the State Bank without compensation, only that it shall be permitted to charge the State Bank for any and all expenses actually and necessarily paid out in connection with its work in liquidating such business.

The contract further provides: "And it is understood and mutually agreed that all assets that are transferred to the National Bank hereunder shall be received by it and credit given the State Bank therefor at the full face value thereof; also that all the negoti-

able paper so transferred shall be endorsed in blank by said bank, and assignments properly made of all securities that are not negotiable, and the title to which does not pass by delivery, and that the full payment of all of such assets is hereby guaranteed by the State Bank; also, that there shall be made an equitable adjustment of the matter of interest,'' etc.

The contract provides that with the transfer of the assets to the National Bank, there shall also be delivered to it all books of account, files, records, canceled drafts, certificates of deposit, cashier's checks, customers' checks, and all correspondence relating to the business of the State Bank as the same has been conducted.

It further provides that the State Bank shall furnish to the National Bank an indemnifying bond or contract of indemnification, to be signed by enough of its stockholders to satisfy the National Bank, indemnifying it against any and all pecuniary loss that it may sustain on account of the assumption by it of the liabilities of the State Bank and the taking over of the business and assisting with the liquidation thereof, under the contract. The bill avers that a satisfactory indemnifying bond was executed and delivered to the National Bank and it is set out in full.

The bill avers that after the transfer of such assets of the State Bank to the National Bank as were permitted by the National Banking Laws, the National Bank has assumed, taken over and liquidated by and through the terms of said contract, and has become responsible to an amount of $126,466.44 over and above such assets as were taken over and credited on the liabilities of the State Bank to its depositors and creditors; that there still remains in the hands of the liquidating committee about $30,000 worth of assets in value to be applied on the liquidation of said liabilities of the State Bank, all other remaining assets being worthless and of no value.

The bill avers that under section 6, art. XI of the
Constitution and section 6 of the Banks Act of the
State of Illinois, Cahill's St. ch. 16a, ¶ 6, every stock-
holder in a banking corporation or institution shall be
individually responsible and liable to its creditors,
over and above the amount of stock held, to an amount
equal to his or her respective shares, for all its lia-
bilities accruing while he or she remains such stock-
holder.  The bill avers that on May 6, 1924, the board
of directors of the State Bank levied an assessment
upon all of the stockholders and that the sum of
$48,770 has been collected by reason of such levy; that
after allowing credit therefor there still remains a de-
ficiency in the sum of $48,689.44 due the National Bank;
that about $22,330 of said assessment has not been paid
and the stockholders liable therefor are insolvent.

The bill sets out the names of the stockholders and
the number of shares held by each, etc., and prays that
the National Bank may be subrogated to the rights of
the depositors and creditors of the State Bank to en-
force the constitutional and statutory liability of the
defendants as shareholder in the State Bank and for
general relief.  Issues were joined and the cause re-
ferred to the master to take and report the evidence.

Upon the hearing appellees did not undertake to
prove that the National Bank was entitled to subroga-
tion.  The court entered a decree on the theory that
the evidence proved that appellees were creditors of
the State Bank and as such were entitled to enforce the
constitutional and statutory liability of the defendants
as shareholders in the State Bank.

Appellants contend that while the bill avers that
appellee, the National Service Bureau, is a creditor of
the State Bank, yet there is no evidence in the record
tending to prove that averment.  Appellees make no
reply to that contention.  The record is voluminous
and the abstract contains 164 pages.  If appellees

offered any proof in support of that averment they should have directed our attention to that portion of the abstract where it may be found. Having failed to do so, we will assume that there was no proof in that regard.

Appellants contend that under the law and the evidence the National Bank is not a creditor of the State Bank and is not entitled to a decree against the shareholders of the State Bank under the constitution and the statute relied upon. It will be observed that the proposal made by the National Bank to the stockholders of the State Bank was to take over such of the assets as would be permissible under the National Banking Law and the Regulations of the Comptroller of the Currency and to assume the liabilities of the State Bank, except the liability of that bank to its shareholders. So far as the record shows there was nothing in the proposal to indicate that the State Bank or its shareholders were in any way to be held liable to the National Bank except that the State Bank was to guarantee the payment of all notes, bonds and other securities transferred to the National Bank, but not those to be transferred to the liquidating committee; and except that a bond or contract was to be given to the National Bank to save it harmless from any pecuniary loss or damage on account of the assumption by it of the liabilities of the State Bank. The resolution of the stockholders was to the effect that the transfer of one portion of the assets to the National Bank and the remainder to a liquidating committee was for the purpose of giving effect to the provisions of the proposal of the National Bank to the end that the affairs of the State Bank may be fully and speedily liquidated and the liabilities of the bank and its shareholders fully discharged.

The contract which was executed by the two banks pursuant to the resolution of the stockholders of the State Bank and the proposal of the National Bank

provides for no liability whatever against the State Bank other than its guarantee of the payment of the particular assets which the National Bank would be permitted to take over under the National Banking Law and the Regulations of the Comptroller of the Currency. The contract is silent as to the constitutional and statutory liability of the stockholders of the State Bank. It required the execution of an indemnifying bond to the National Bank to save it harmless from any loss or damage for having assumed the liabilities of the State Bank and such a bond, satisfactory to the National Bank, was executed and delivered to it.

We find no evidence in the record tending to show that the National Bank was unable to collect on any of the assets which it was permitted to receive from the State Bank under the National Banking Law and the Regulations of the Comptroller of the Currency. If the National Bank received full payment on those assets, and in the absence of proof to the contrary we must assume it did, then there is nothing in the proposal, the resolution of the stockholders or the contract which would make the National Bank a creditor of the State Bank and for which there would be a constitutional and statutory liability against appellants as stockholders of the State Bank.

The Metropolitan Bank of Buffalo, New York, was a State Bank and was in financial trouble. The German Bank of the same city undertook to take over its assets and liquidate its affairs under the terms of a written contract. The provisions of that contract were somewhat like those in the case at bar. The contract was silent as to the liability of the Metropolitan Bank and as to the liability of the stockholders of that bank. It required the Metropolitan Bank to procure and deliver to the German Bank a proper guarantee of certain of its directors and stockholders against any and all loss which it might in anywise sustain by reason of any advance by it made pursuant to the agreement. In

liquidating the affairs of the Metropolitan Bank the German Bank paid out more money than it realized from the assets. In a well-considered opinion the New York Court of Appeals held that the German Bank was not a creditor of the Metropolitan Bank and was not entitled to enforce the liability of the shareholders of that bank for the debts of the corporation. *Assets Realization Co. v. Howard,* 211 N. Y. 430, 105 N. E. 680.

The cases relied upon by appellees in support of their contention to the contrary are: *Golden v. Cervenka,* 278 Ill. 409; *Hightower v. American Nat. Bank of Macon,* 263 U. S. 351, and *Wyman v. Wallace,* 201 U. S. 230. The question involved in the *Golden* case was entirely different and does not support appellees' contention. In the *Hightower* case the two banks were under the National Banking Law and the contract contained the following provision: "And it being further distinctly agreed and understood that neither the resolutions of said boards of directors of said associations nor this contract shall relieve the shareholders of the Commercial National Bank from their legal liability as shareholders to respond, in the event it may be necessary to have recourse upon such shareholders' liability, for any deficit which may remain after exhausting the other assets of said association in the payment of its liabilities." That contract was executed on August 11, 1914, and was ratified and approved by the stockholders of the Commercial National Bank on September 30, 1914. The conclusion of the court in that case was based upon the provision of the contract aforesaid and the ratification of the same by the stockholders. It is not applicable to this case. The *Wyman* case does not throw any particular light on the question here involved.

We are of the opinion that appellees have failed to prove that the National Bank was a creditor of the State Bank and entitled to enforce the constitutional

and statutory liability of appellants. Other questions are discussed and contentions made, but in our view of the case it is unnecessary to further extend this opinion in a consideration of the same. The decree as to appellants is reversed.

*Reversed.*