## NATIONAL BANK OF COMMERCE OF HOUSTON v. ROGERS.

### No. 10628.

Court of Civil Appeals of Texas. Galveston.
Oct. 13, 1938.

Rehearing Denied March 16, 1939.

Kayser, Liddell, Benbow & Butler and Gainer B. Jones, all of Houston, for appellant.

Robt. L. Sonfield and Miles Strickland, both of Houston, for appellee.

CODY, Justice.

This is a suit on a promissory note for the principal sum of $1200, dated September 22, 1931, executed by appellee, payable to the order of the Channel State Bank in Houston, 90 days after date. The note sued on was one of several collateral notes totalling the face value of about $30,000, which the Channel State Bank had pledged to secure the payment of its own note to the Public National Bank & Trust Company of Houston, for the principal sum of $20,000. It was acquired by appellant, plaintiff below, in the following manner:

On November 9, 1931, the Public National executed a liquidation contract with appellant as of the date of October 26, 1931, by the terms of which appellant was to act as liquidating agent of the Public National, and under and by virtue of which the Public National transferred over to appellant all its assets, including the $20,000 note, aforesaid, together with its collateral including the $1200 note. The $20,000 note matured on November 7, 1931, and was reduced by payment to $17,000, and renewed. In its renewed form it was dated November 9, 1931, and was made payable to the order of "Ourselves", and was endorsed by its maker, the Channel State Bank, under date of December 16, 1931 (the date the Channel State Bank was

closed, as appears later). Following such endorsement was the following: "Without Recourse of Warranty of any kind or character, Pay to the order of the National Bank of Commerce of Houston. '(Signed)' Malcolm M. Meek, Receiver of the Public National Bank & Trust Company of Houston". The collateral notes securing its payment were of the reduced face value of about $28,000, and the note sued on continued to be among them.

On December 16, 1931, the Channel State Bank was closed because of insolvency, and was taken over by the Banking Commissioner of the State.

Appellant, as liquidating agent of the Public National, made collections on the collateral notes pledged to secure the Channel State Bank note (for $17,000), up until October 19, 1932, upon which date the uncollected collateral notes were sold at pledgee's sale with the knowledge and consent of the Commissioner of Banking, and at such sale were bought in by appellant as liquidating agent of the Public National. Previous to such collateral sale, and on April 1, 1932, the National Bank of Commerce, as liquidating agent, had filed this suit for the collection of the $1200 note herein sued on,—being, as stated, one of the collateral notes securing the $17,000 note. Prior to the pledgee's sale of the collateral notes, and on July 29, 1932, appellant, as liquidating agent, filed with the Banking Commissioner a claim for $16,056.33 against the Channel State Bank, which was allowed.

On October 31, 1936, appellant filed its second amended original petition, wherein it substantially repeated its allegations as to its appointment as liquidating agent under the liquidation contract, and as to the execution, etc., of the $1200 note, and its pledge as collateral to appellant as liquidating agent to secure the payment of the $17,000 note. And then, in its second amended petition, it alleged for the first time that, thereafter, on October 19, 1932, appellant, acting under the provisions of the pledge agreement, foreclosed its pledgee's lien, and acquired the note for a valuable consideration, and is now the legal owner and holder thereof.

To appellant's second amended petition, appellee filed certain pleas in abatement, which appellant states were overruled as having been filed too late, and which seem to have not been filed in due order, and which we therefore deem unnecessary to

set forth in view of the length of the statement of the case we have had to make. Subject to such pleas in abatement, appellee answered by general demurrer, general denial, and pleaded the two and four year statute of limitation; that appellant is not the owner and holder of the note sued on; that appellant is without legal right to maintain this suit; that appellant, as liquidating agent, had no legal capacity to sue in its own name, and not entitled to recover in the capacity in which it sues. Appellee further alleged by way of defense that he executed and delivered the note to the Channel State Bank, not for the purpose of obtaining money from the Bank, but to permit the Bank to use such money; that he received nothing on the note, but the same was executed solely for the accommodation of the bank; that the interest thereon was paid by Hilliard (the president) and the Bank; that the consideration, if there was any, had failed; that the note was obtained by the fraudulent scheme and conspiracy of the Channel State Bank and Hilliard; that Hilliard owned the controlling interest in the Bank, and operated it as he pleased; that when the note was executed it was agreed that it should remain with the Bank, and be paid when due and that appellee should not be compelled to pay it; that the note was acquired by appellant after maturity, and after institution of this suit (by purchase at pledgee's foreclosure sale), with full knowledge of the defenses against it; that at the time the Channel State Bank closed its doors, appellee had on deposit therein more than the amount of such note, which is an offset thereagainst. Other defenses were plead which, in view of the jury's findings, are unnecessary to be recounted.

In order not to be confused by the issues submitted to the jury, it is necessary to state, what is not otherwise material, that the note sued on was itself a renewal note. The findings are as follows:

"Special Issue Number 1.

"Do you find from a preponderance of the evidence that the defendant, F. Rogers, executed the $1200.00 note in controversy for the purpose of enabling W. B. Hilliard to obtain money thereon to be used by the said Hilliard in purchasing stock in the Channel State Bank?" To which the jury answered, "We do".

"Special Issue No. 2.

"Do you find from a preponderance of the evidence that W. B. Hilliard made to the defendant the representations in substance that said Hilliard desired to purchase certain stock of the Channel State Bank, and if defendant would sign a note for the sum of $1200.00 and permit the use of the money for said purpose, that defendant would not be compelled to pay said note or any renewal; and, that said note would be held at said Channel State Bank?" To which the jury answered, "We do".

"Special Issue No. 3.

"Do you find from a preponderance of the evidence that the defendant believed the representations, if any, made to him by the said W. B. Hilliard?" To which the jury answered, "We do".

"Special Issue No. 4.

"Do you find from a preponderance of the evidence that the defendant relied on the representations, if any, made to him by said W. B. Hilliard?" To which the jury answered, "We do".

"Special Issue No. 5.

"Do you find from a preponderance of the evidence that the representations, if any, made by W. B. Hilliard, were made with the intent of inducing the defendant to sign the original note in controversy?" To which the jury answered, "We do".

"Special Issue No. 6.

"Do you find from a preponderance of the evidence that the defendant was induced to sign the original note and the note in controversy by reason of representations, if any, made to him by W. B. Hilliard?" To which the jury answered, "We do".

"Special Issue No. 7.

"What do you find from a preponderance of the evidence was the amount of money, if any, that the defendant had on deposit in the Channel State Bank at the time it closed its doors?" To which the jury answered, "$442.08".

"Special Issue No. 8.

"Do you find from a preponderance of the evidence that the defendant received anything of value on the original note or the note in controversy?" To which the jury answered, "We do not".

Both parties moved for judgment on the jury's verdict, but the court rendered judgment for appellee and against appellant.

Appellee asserts that this case is ruled by the case of National Bank of Commerce v. Hendrick Grain Company, affirmed by this court without written opinion on October 22, 1936. In that case suit had been brought by appellant on another of the collateral notes which had been pledged by the Channel State Bank to secure the payment of the above mentioned $17,000, and which collateral note had been sold at the same pledgee's sale at which the note here sued on was sold, and was, like such note, bought in by the appellant. The record in that case, however, discloses that the affirmance of the judgment of the court below (a County Court at Law of Harris County) was upon a plea of res adjudicata which was applicable therein, and which is not in this cause; and that it was not necessary to decide the other questions raised in that appeal, and they were not decided. The decision in the Hendrick Grain Company case, therefore, is not in point here.

The Liquidation contract under which appellant became Liquidating Agent of the Public National had the effect of transferring all the assets of the Public National to secure appellant, who had assumed the Public National's obligations in the sum of approximately $6,000,000. By the terms of the contract appellant was bound to pay over to the shareholders of the Public National, pro rata, any surplus remaining from the proceeds of the assets which were assigned and hypothecated under such liquidation contract, after first applying such proceeds to the debt, interest, and expenses.

■■■ The liquidation contract constituted a loan with the assets pledged as security, and not a purchase of the assets by appellant. Hightower v. American National Bank of Macon, 263 U.S. 351, 44 S.Ct. 123, 68 L.Ed. 334. See also Scott v. Norton Hardware Co., 4 Cir., 54 F.2d 1047. It was such a contract as the parties might lawfully make. Hightower v. American National Bank, supra. Appellant might have instituted suit in the name of the Public National to recover on the assets assigned to it. But it might also sue as liquidating agent, or in its own name. 6 Tex.Jur., pp. 888–891.

■■■ It is clear, of course, that appellant did not acquire the $1200 note in due course, before maturity. Appellant admits that any defense that would be valid against the note in possession of the Channel State is equally valid against the note in its own possession. If the note was made for the accommodation of the Channel State, the Channel State could not collect it from the maker, appellee. The evidence of appellee, and the findings of the jury, make it clear that he was an accommodation party. "An accommodation party is one who has signed the instrument as maker * * * without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party." R.S.1925, Art. 5933, Neg.Inst.Act. sec. 29. But the evidence referred to, and the findings of the jury make it clear that the party accommodated was Hilliard, the president of the Channel State, and not the Channel State. "It is only in those cases where the note is executed for the sole purpose of its negotiation by the payee in order that he may obtain credit thereby, and under an agreement that he is to provide for payment at maturity and indemnify the maker, that the instrument becomes in law accommodation paper for the payee." Brinker v. First National, Tex.Civ.App., 16 S.W.2d 965, 967, which was reversed on another point, as shown by the opinion reported at Tex.Com.App., 37 S.W.2d 136.

■■■ On the face of the note, and under the jury's findings, the Channel State was a holder of the note for value. R.S. 1925, Art. 5933, secs. 24, 25 and 26. Furthermore, upon the face of the transaction, the interest of Hilliard was in conflict with that of the Bank, so that his knowledge was not that of the Bank. But even if the Bank knew that appellee was only an accommodation maker, we fail to see how such knowledge would prevent the Bank from collecting on the note, had it never been transferred. First National v. Boxley, 129 Okl. 159, 264 P. 184, 64 A. L.R. 588; German American State Bank v. Watson, 99 Kan. 686, 163 P. 637.

■■■ Appellee contends that, as Hilliard was the sole representative of the Channel State in the note transaction, that his knowledge of the transaction is imputed to the Bank, notwithstanding his adverse interest, and relies on Goldstein v. Union National Bank, 109 Tex. 555, 213

S.W. 584. Without ruling upon whether the test laid down in that case would otherwise make it applicable here, it would seem that it had no application for the reason that Hilliard never purported to be acting for the Bank, or seeking to bind it, but to be acting only on his own behalf. That is, the money was loaned to enable Hilliard to buy the stock for his individual account—not for the Bank to do so.

We have carefully examined the complicated and many interesting questions here presented. What we have already said necessarily disposes of those which have not been specifically discussed, with one exception later referred to. The answers of the jury to the issues submitted, it seems to us, determine that appellee was an accommodation maker of the note, but that he was liable thereon to the Channel State. If he was liable to the Channel State, we fail to see any basis for not holding him liable to the Channel State's successor in interest, appellant. The trial court should, therefore, have entered judgment for appellant on the jury's findings. However, the note was subject to an offset in the amount of the appellee's deposit in the Bank at the time its doors were closed. This amount should have been applied to the note as of such date, namely, December 16, 1938. Appellant contends that appellee's pleadings were insufficient to authorize such application, and apparently takes the position that appellee should be refused such a set-off because he did not correctly plead the exact amount of the deposit. Assuming for the moment that appellant levelled exceptions at appellee's pleadings in this respect, and was otherwise in position to complain of such pleading, the remedy to which it would be entitled is not so severe as it seems to think. The remedy would not be to deny appellee any recovery of any deposit he had in the Channel State, but would be to remand the cause for a new trial so appellee could be afforded an opportunity to amend his allegations. Appellant is not seeking to have the cause remanded for appellee's failure to plead the specific amount of the deposit, but, as indicated, to have this court deny appellee any recovery for defect in pleading, which is obviously curable: Such asked-for relief is refused.

Upon the verdict of the jury, the court should have rendered judgment in favor of appellant against appellee on the note sued on. In arriving at the amount due on the note on the day judgment was taken below, the amount appellee had on deposit at the time the Bank closed, December 16, 1931, shall be applied to the amount due on the note on such day. It is immaterial in what capacity the appellant recovers such judgment, as, under the liquidation contract, it must apply the proceeds of such recovery, and account therefor, as provided therein.

These conclusions require that the judgment of the court below be, as above indicated, reversed and rendered.

Reversed and rendered.

PLEASANTS, C. J., absent.