No. 31,870

E. A. CORY, and E. A. CORY as Liquidating Agent of the Concordia State Bank, *Appellant*, v. THE CONCORDIA STATE BANK et al., *Appellees*.

(50 P. 2d 929)

Opinion filed November 9, 1935.

*Charles L. Hunt, Frank C. Baldwin, Charles A. Walsh,* all of Concordia, *William D. Vance* and *Fred Emery,* both of Belleville, for the appellant.

*M. V. B. Van De Mark,* of Concordia, and *G. R. McConnell,* of Laramie, Wyo., for the appellees.

The opinion of the court was delivered by

THIELE, J.: This is an appeal from a ruling sustaining a demurrer to plaintiff's evidence.

On September 10, 1929, the stockholders of the Concordia State Bank, hereafter called the Concordia bank, held a meeting to consider liquidation of the bank, and in connection adopted a resolution authorizing the board of directors to enter into a submitted form of contract whereby their bank was to be liquidated through the Farmers and Merchants State Bank of Concordia, hereafter called the Farmers bank, and appointing plaintiff as liquidating agent to wind up the affairs of the bank. On the same day the board of directors met and adopted a similar resolution. Under both resolutions the board of directors and the officers were authorized to "carry out the terms and provisions" of the contract and to "make proper transfers and conveyances by deeds, assignments and by other written instruments *necessary to carry out said agreement and to complete such liquidation.*" (Italics ours.) On Sep-

tember 14, 1929, the contract between the two banks was executed. Briefly stated, the Concordia bank was to transfer to the Farmers bank all of its deposits, which the Farmers bank assumed and agreed to pay. Contemporaneously the Farmers bank was to purchase from the Concordia bank loans and discounts to an amount approximately equal to such deposits, the title to be transferred by indorsement "without recourse." No sale or transfer was to be made until the Farmers bank could examine the loans and discounts. The contract stated the amount of the deposits to be transferred and the amount of the loans to be purchased could not then be ascertained, and that within thirty days the requisite investigation would be made as to loans to be purchased, and the schedules of deposits and loans purchased would then be prepared and the matter concluded. The 12th paragraph of the contract recited:

"For the purpose of legally effecting its disability from continuing in the business of receiving deposits subject to check and any general banking business, second party [the Concordia bank] agrees immediately *upon the transfer of such deposits and assets to call and hold a formal stockholders meeting for the purpose of going into such voluntary liquidation and to authorize and/or ratify the sale of the assets described in schedule 'E' hereof to first party.*" (Italics ours.)

Many other provisions of the contract are not noted, as they are not material to this appeal.

The Concordia bank had an account with a St. Joseph, Mo., bank where it discounted its notes, and on September 14, 1929, the amount of its obligation was $20,000. It is not entirely clear from the evidence as abstracted whether the amount was $10,000 or $20,000. Matters under the liquidation contract proceeded and were ready for final action on October 4, 1929. In the meantime, customers of the Concordia bank had drawn out more money than had been received on deposit and additional discounts were made so that on October 4, 1929, the Concordia bank owed $25,415.36, to secure which it had hypothecated notes amounting to $30,000 or more. The Farmers bank had elected to take all or a considerable part of the hypothecated notes, and when the time for closing arrived, it was necessary that these notes be released by payment or transfer of the indebtedness, and this was done by the Concordia bank borrowing from the Farmers bank the amount of the indebtedness, paying it to the St. Joseph bank, and receiving the collateral. The details of the account need not be stated, but the matter was concluded between the Concordia bank and the Farmers bank, and thereafter depositors,

including appellees, looked to the Farmers bank for their deposits. It does not appear that the Concordia bank stockholders ever had a meeting to vote liquidation, but notwithstanding affairs proceeded as though it had been held, Cory took charge of the untransferred assets and continued with the liquidation of them until May 13, 1932, when he filed an action for the appointment of a receiver to complete the liquidation, and on May 18, 1932, a receiver was appointed.

The receiver instituted actions against the appellees to recover statutory liability. Cory filed a claim for salary due him as president of the bank prior to the merger, for expense items paid by him in liquidation, for moneys paid by him personally on the note to the Farmers bank, and for interest, the total charge being $26,-156.46, against which he credited amounts received, with interest allowed, totaling $5,949.20, the balance claimed being $20,207.26. In his petition for allowance of the claim, he gave further credit for the amount of $7,100 as statutory liability on stock owned, leaving a claimed balance of $13,207.26 (should have been $13,107.26). Objections to its allowance were filed by appellees. As printed, the objections cover nine pages of the abstract. They raise many questions not here necessary to notice. We need state only that they question Cory's right to recover for the reasons hereafter mentioned.

At the trial appellees contended, as here, that the note of the Concordia bank to the Farmers bank was made without authority, was beyond the terms of the liquidation contract, and that as to the other items they were offset by his admitted liability. It may here be stated, however, that on this appeal we are concerned only with the authority of the Concordia bank to make the note and Cory's right to recover for amounts paid on it. In connection with his proof, Cory offered in evidence a resolution adopted by the board of directors on January 4, 1924, authorizing the president, vice-president and cashier to borrow money and pledge notes and rediscount bills receivable, the resolution stating the powers should continue until express notice in writing of their revocation had been given. Such authority had never been revoked. He also testified in detail with reference to the closing of the liquidation contract, the note to the Farmers bank and the circumstances under which it was given, his account as liquidating agent, etc. At the close of Cory's evidence appellees demurred, suggesting eight or nine reasons why appellant should not prevail, one of them being

that the note was given without authority, was *ultra vires*, and had never been ratified or approved by the stockholders. The court did not immediately rule on the demurrer, but to save time heard evidence of the appellees. Later it found that plaintiff's demand, exclusive of his claim based upon payments made on the note of October 4, 1929, to the Farmers bank, did not equal or exceed the claim confessed by him in favor of the Concordia bank on account of his stockholder's liability, and it then ruled:

"The demurrer of the contestants is sustained, the court considering that the resolutions of the stockholders did not give the bank authority to execute new obligations for borrowed money, the court being of the opinion that the authorization given to the directors was merely to execute the necessary conveyances and transfers to effect the object of the meeting."

Cory appeals.

As we review the evidence, the trial court erred. It may be noted that even though the Concordia bank had no authority whatever to make the note of October 4, at the time the contract for liquidation was entered into, it owed the St. Joseph bank $20,000, and this amount was included in the $25,415.36 note paid by Cory individually. Whatever might be said about the power of the Concordia bank to make the second note, there is absolutely no question about there being borrowings from the St. Joseph bank as of September 10, and under any theory Cory is entitled to recover this amount if he paid it, even though the methods followed may have involved the giving of an unauthorized note. However, it is to be observed that when the liquidating contract was authorized on September 10, 1929, and when it was executed on September 14, 1929, it was apparent that the exact amount of deposits to be assumed and the particular loans and discounts to be purchased by the Farmers bank were uncertain, as is readily ascertainable from the contract which had been reduced to writing and was before the stockholders at their meeting on September 10. The contract specifically provided that the Concordia bank, upon the transfer being made, would immediately hold a formal stockholders' meeting to authorize liquidation and to ratify what was done. The fact the meeting was never held makes no difference, the bank certainly was not in liquidation prior to the performance of the contract on October 4. It is also quite apparent under the contract, and must have been known to the stockholders at their meeting on September 10, that the condition of the bank as to amounts due to depositors would change from day to day until the

Farmers bank took over the liability. If the officers of the bank had permitted the cash on hand to be exhausted and a depositor had thereafter demanded his due, the bank would have had to close, and the entire purpose of the contract would have failed. The stockholders' resolution empowered the officers to carry out the terms and provisions of the contract and to "make proper transfers and conveyances by deeds, assignments and by other instruments necessary to carry out said agreement and to complete such liquidation." In view of the fact the bank was left as a going institution for the time being, that the resolution authorizing the officers to borrow money and hypothecate and discount bills receivable remained unrevoked, and that they were under obligation to complete the liquidation, it follows they had power to borrow money to keep the bank open until the liquidation contract could be performed. When the original amount due the St. Joseph bank on September 10 was increased, so far as the evidence showed, the moneys received were used to pay off depositors, and when on the closing day the indebtedness was transferred from the St. Joseph bank to the Farmers bank, all that happened was merely to change creditors. (See *Fourth National Bank v. Smith*, 141 Kan. 858, 44 P. 2d 242.) Cutting through the entanglements of the evidence, in effect it showed that Cory paid depositors or bank's obligations, and, so far as the record shows, is entitled to repayment. If Cory paid the note and is not permitted to recover the amounts paid thereon, the effect is to permit the Concordia bank to pay less and do less than it contracted to do, all to the ultimate advantage of its shareholders. The only conclusion that can be drawn from plaintiff's evidence is that he paid the note and is entitled to recover the amounts so paid.

In the discussion of this case we have avoided the specific items of Cory's claim, other than payments on the note of October 4, and as to these we assume payments were made as shown, for under the trial court's finding and its ruling on the demurrer, it is obvious it made no finding other than they did not exceed his admitted liability. We are therefore not concerned with some matters urged in the briefs. On the trial of the cause in the lower court, the correctness of the account, the objections to it, the question of the statute of limitations and other matters urged why the claim should not be allowed are proper for consideration.

The trial court's ruling sustaining appellee's demurrer to appellant's evidence is reversed, and the cause remanded.